## Shoop, Appellant, *v.* Fee.

*Landlord and tenant—Removal of goods—Violation of covenant—Goods of a third person—Attorney's commissions.*

1. A provision in a lease that the entire rent for the balance of the term should become due and payable if the tenant removed or attempted to remove his goods, does not apply to the action of a third person who attempts to remove from the premises goods owned by him and subject to distress.

2. A provision in a lease giving the landlord a right to enter judgment in case of default "with costs of suit and attorney's commission of twenty dollars for collection," does not apply to proceedings by distress.

Argued April 17, 1914. Appeal, No. 98, April T., 1914, by plaintiff, from judgment of C. P. No. 4, Allegheny Co., First Term, 1912, No. 440, on verdict for defendants in case of Minnie V. Shoop v. Arthur A. Fee and D. J. Sterling. Before RICE, P. J., ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ. Reversed.

Replevin for goods distrained.

At the trial it appeared that Minnie V. Shoop lived with her son Paul Shoop and his wife in premises leased by the son from Mrs. D. J. Sterling. Mrs. Shoop claimed the goods in question. At the time the landlord's warrant was issued on December 18, 1911, there was no rent due, but the warrant was issued because of an alleged attempt to remove the goods in violation of the terms of the lease.

The court charged in part as follows:

[It seems to me the principal question here for you

gentlemen to determine, is whether there was an attempt or an intention to remove the goods from the premises by Mrs. Minnie V. Shoop.] [1]   It appears that when Mr. and Mrs. Shoop, the younger, leased the premises and entered into possession of them, they took with them certain furniture.  Some of it at least, had been purchased on the installment plan.   There are houses that sell goods on partial payments.   Customers pay so much down, and pay so much a month.   Upon failure to make these payments, the installment house has the right to come in and take the furniture away. It appears that some of the furniture, at least, taken into the house by your Mr. and Mrs. Shoop, was furniture bought upon the installment plan.   According to the testimony of Mrs. Shoop, that furniture, or a greater part of it, was sent back to the installment house about the first of November, 1911; and about that time the claimant in this case, Mrs. Shoop, the mother of Paul Shoop, the tenant, moved her furniture into the house; went there, as Mr. Shoop says, to board; but according to his testimony, as I recollect it, after the first of November practically all the furniture in that house belonged to his mother, and that is the furniture that the landlord, Mrs. Sterling, claims was about to be removed.

[If the furniture of the younger Mr. and Mrs. Shoop was practically all taken out of the house, and the furniture of the older Mrs. Shoop, the mother of Paul Shoop, taken in there, that furniture undoubtedly became liable for the rent of the house, and could be levied upon, if there was an attempt to take it away; at least, that portion of it that was not actually used by Mrs. Shoop.] [2]   The court has held that where goods are taken to a tailor's to be made up, those goods are not liable for the rent due by the tailor.   So if a farmer takes grain to a mill to be ground and there is rent due on the mill, and the levy is made while that grain is there, the courts have held that that cannot be distrained; that in the course of trade these articles left with the trader

cannot be levied upon for rent. They have also held that where a boarder takes into a house furniture, furnishes his room—if I take one of you gentlemen into my house as a boarder, and I furnish you with a room, and you furnish that room, and I fail to pay my rent, the law is that your furniture in that room cannot be levied upon and sold for rent; that it is exempt from distress. But that does not apply to furniture used generally throughout the house. If you bring into my house other furniture and it is used throughout the house, that furniture is liable for distress, liable for the rent.

Where a person claims to be a boarder in a house and sets up that defense, that the furniture in the room belongs to her or belongs to him, and is not liable for the distress, the burden is upon that person to show what that furniture is, what it consists of, and its value. In this case I do not recall any testimony that shows just what furniture was in the room that was solely occupied by the claimant, the older Mrs. Shoop, in this case. The testimony is that all the furniture in the house practically was hers; that it was used by the family generally. But the son says that some of it was in his mother's room. He does not say what it consisted of; whether it consisted of beds, couches, chiffoniers or bureaus, or what; and as I said a moment ago, the burden is upon Mrs. Shoop to show just what portion of that furniture was in her room. If she has not shown you that, you have a right to assume that it was all used generally by the family. The burden is upon her to show you that, and unless there is some testimony here that will enable you gentlemen to determine specifically what articles of furniture were in her room, then I say to you as a matter of law, that all the furniture would be liable except just what she says was in her room. [The older Mrs. Shoop was not called. She is not here as a witness. She has not testified to the ownership of this property or the value of it, or what was in her room, what portion of it was actually in her room.] [3] If she

was a boarder in the house, and had actually shown what furniture was in the room occupied by her, I would say to you as a matter of law, that that furniture could not be distrained, it could not be sold for the rent. But I do not recall any testimony to that effect that will enable you gentlemen to determine just what furniture was in that room. However, if there is any testimony that will enable you to do so, then you are entitled to relieve that furniture from the distress. It could not be sold, and, therefore, it cannot be recovered for in this case.

As to why this landlord's warrant was issued when no rent was due, Mrs. Sterling contends that there was an attempt to remove the furniture; and she says that she was told on Sunday, the day before the landlord's warrant was issued, by a brother of the younger Mrs. Shoop, that the Shoops were going to move on Monday; and acting upon that, she issued the landlord's warrant. Mr. Coleman who was engaged as a teamster, moving, says that he was employed by the older Mrs. Shoop to remove these goods, and that when he went there, they were prepared for moving; that some of them were packed or ready, looked as though they were about to be moved. The constable says when he went to the house to make the levy he found some of the rugs tied up, rolled up, and also that some books were packed. [The question here is, was there an intention on the part of these parties to move out of that house? If there was, and preparations had been made to that effect, then I say to you under this lease, all the rent for the balance of the term became due, and a landlord's warrant might be issued to collect the same,] [4] except such portion of the furniture—if you find that the older Mrs. Shoop was a boarder in the family, and that she had a room there, and she furnished that room—except to the extent that she had her own furniture in that room. And the burden is upon her to show what she had in that room.

[If you find for the plaintiff, you will find the amount

of rent due with interest from May 1, 1912, and also an attorney's commission of $20.00. This lease provides that in the event of a default and it becoming necessary to issue a landlord's warrant, an attorney's fee of $20.00 for the collection may be collected.] [5] Mrs. Sterling's contention is that there is four months' rent due at $40.00 a month; that is, from the first of January to the end of the term; and as I said, if there was an attempt to remove the furniture or an intention to remove it, then they had a right to levy and sell any portion of it, except what would be in the room of Mrs. Shoop, provided you find that she was a boarder in the family.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* among others were (1–5) above instructions, quoting them.

*L. C. Barton,* for appellant, cited: Harrop v. Lutz, 53 Pa. Superior Ct. 195; Walsh v. Phila. Bourse, 32 Pa. Superior Ct. 348.

*J. M. Russell,* for appellee, cited: Page v. Middleton, 118 Pa. 546; Jimison v. Reifsneider, 97 Pa. 136.

OPINION BY RICE, P. J., July 15, 1914:

The rent under the lease from Mrs. D. J. Sterling to Paul Shoop was payable monthly in advance, and was paid up to January 1, 1912. Therefore, the landlord's warrant was prematurely issued on December 18, 1911, unless it was justified under the clause of the lease which provided, that, if the tenant "shall remove or attempt to remove or declare an intention to remove the goods from said premises, then and in such case, the entire rent for the balance of said term shall at the option of the lessor, at once become due and payable, as if by the terms of the lease it were all payable in advance. . . ." This language plainly means the tenant's removal, at-

tempt to remove, or declaration of an intention to re-move. See Walsh v. Phila. Bourse, 32 Pa. Super. Ct. 348; Harrop v. Lutz, 53 Pa. Super. Ct. 195, 201. While, under the common-law rule, the goods of a third person found on the leased premises at the time of distress lawfully laid for rent in arrear may be seized, yet there is no reason in justice for extending the right of dis-training beyond what the ancient law has established, as was said in Capel v. Buszard, 6 Bingh. 150. To extend this right to take the goods of a third person, by strain-ing the covenant under consideration beyond the plain intent of the words, so as to make the mere attempt of the third person to remove his own goods happening to be on the premises, or his declaration of intention so to do, as effectual to advance the time of payment of rent, as would be a similar attempt or declaration of intention by the lessee as to goods he owned or con-trolled, would be unwarranted. There was evidence that would sustain findings that at the time of the dis-tress the lessee had left home and his whereabouts were unknown; that his wife, who was left in charge of the premises, and his mother (the plaintiff), who was living with her as a boarder, were about to remove all the household goods, the principal part of which belonged to the mother, from the premises; and that in this attempt they were acting in conjunction. We are of opinion that such findings would bring the case within the true meaning and intent of the covenant, and we are inclined to the opinion that the weight of the evidence was in favor of such finding. But, on the other hand, there was evidence, amounting to more than a scintilla, that the intention to remove, or attempt to remove, was not that of the wife, but only that of the mother, and in-cluded only the latter's own goods. The evidence being oral and to some extent in conflict, the questions above suggested were for the determination of the jury. There-fore, the refusal of the plaintiff's point for binding direc-tion, and her subsequent motion for judgment non ob-

stante veredicto, were properly overruled.    But in so
far as the instructions under which the questions were
submitted conveyed the idea, as some of them seem to
have done (see particularly first and sixth assignments
of error), that the principal question in the case for the
jury to determine was, whether there was an attempt or
an intention by the plaintiff to remove the goods from
the premises, and that, if she made any attempt to
remove her goods before the distress, the whole rent for
the balance of the term became due and payable, we
think there was error.    We need not discuss the several
assignments of error in detail.    The foregoing sufficiently
suggests our view regarding them.

The question raised by the fifth and seventh assign-
ments of error is as to whether, in the event of a finding
in favor of the defendants, an attorney's commission of
$20.00 should be included.    The lease contained a pro-
vision that, in case of default in payment of rent or any
other breach of covenant, a judgment might be entered
against the tenant and in favor of the lessor for the sum
due by reason of the default or breach of covenant,
"with costs of suit and attorney's commission of $20.00
for collection."    No other express provision with regard
to the attorney's commission has been called to our
attention, and no case has been cited which extends such
provision in the lease to proceedings by distress.    We
are not convinced that there is any principle which
justifies its extension to that kind of proceeding.    The
words "expenses, etc.," in the immediately preceding
clause of the lease may be well satisfied without con-
struing them as arbitrarily entitling the landlord to an
attorney's commission of $20.00.

The judgment is reversed and a venire facias de novo
is awarded.