## Parkview Court Apartments v. Carr

*Timothy F. Sullivan*, for plaintiff.
*Margaret A. Lenzi*, for defendants.

DIGGINS, *SR.*, *J.*, April 4, 1979—

## I. STATEMENT OF THE ISSUES

A. Is plaintiff entitled to possession of the apartment presently occupied by defendants, i.e.,

did plaintiff give, and did defendants receive, proper notice of termination of the lease between plaintiff and defendants?

B. Is plaintiff entitled to recover from defendants the legal fees expended by plaintiff in pursuing this action?

## II. FINDINGS OF FACT

1. Plaintiff and defendants did enter into a lease agreement on October 13, 1977, for the rental of Apartment 1610-B Patricia Drive, Yeadon, Pa., for the term of one year, renewable on a year-to-year basis unless or until terminated by either party.

2. On or about August 15, 1978, plaintiff, by its agent and/or employe, Lawrence E. Dickerson, prepared a notice of lease termination.

3. The notice of lease termination informed defendants that their lease would not be renewed on November 1, 1978, and that they must vacate the premises and return the keys to the office of plaintiff on or before that date.

4. The notice of lease termination was placed upon the leased premises by Lawrence E. Dickerson on or about August 15, 1978, by slipping the notice underneath the door to defendants' apartment.

5. Defendants received the notice of lease termination.

6. Defendants failed and refused to vacate the apartment as per the terms of the lease and the notice of lease termination.

7. Plaintiff filed a landlord and tenant complaint on November 1, 1978, before District Justice Francis J. Murnaghan demanding possession of the apartment citing as a reason "the term for which the property was rented is fully ended."

8. Following a judgment for possession in favor of the landlord in the lower court, defendants appealed said judgment to this court.

9. Paragraph 36 of the lease entered into between plaintiff and defendants provides as follows: "In the event landlord employs an attorney or incurs any legal or other expenses because of tenants' violation of any term of this lease, tenant agrees to pay for the same."

10. The above clause was not specifically explained to defendants by plaintiff; was not questioned by defendants; was not the subject of bargaining between the parties; and was not such as might be expected or contemplated by defendants without being specifically told so by plaintiff.

11. The bargaining positions of plaintiff and defendants, during the negotiations and signing of the lease, were not equal, plaintiff having a vastly superior position.

12. The lease in question was a "form" lease, prepared and presented by plaintiff, with no prior participation by defendants in its preparation.

## III. DISCUSSION

All parties agree that the first issue—whether or not defendants received the notice of lease termination—is one to be decided purely on credibility. Plaintiff's agent said he put the notice of lease termination under defendants' door, as per the legal requirement of the Act of April 6, 1951, P.L. 69, as amended, 68 P.S. §250.501. Defendants claim that they never received the notice; hence, their lease automatically renewed for an additional year.

After reviewing the testimony of the witnesses for both sides, the chancellor concludes that plaintiff's

agent did in fact give proper notice of termination to defendants, and defendants did in fact receive that notice.

The second issue—whether plaintiff is entitled to attorneys' fees, as per the terms of the lease—is one of law. Plaintiff, in support of its contention, cites several cases from other states allowing this recovery. Of course, this court is not bound by those decisions. The one Pennsylvania case cited by plaintiff, Shoop v. Fee, 57 Pa. Superior Ct. 585 (1914), is 65 years old; and is distinguishable from the present case not only because it emanates from a period of our history before consumer or tenants' rights were substantially or justifiably recognized, but also because the lease in Shoop, supra, provided for a specific amount of attorney's fees, so that landlord and tenant were aware, or could have made themselves aware, of what they were bargaining for. The lease in the case at bar makes no mention of amount, and gives no guidelines which would in any way enable a prospective or present tenant to estimate or ascertain his exposure or extent of liability.

In fact, the specific claim in question requires the tenant to pay "any legal or other expenses" incurred by the landlord in the event of a violation of the lease by the tenant.

The court determines this lease provision to be invalid and unenforceable for several reasons.

First, as previously stated, the provision provides no guidelines or boundaries by which a tenant might be able to estimate or foresee the financial results of his actions. Theoretically, even a minor violation might result in the landlord purposely incurring enormous "legal or other expenses," with the tenant being responsible.

The concept of foreseeability, especially pertaining to contracts, has always been part and parcel of our laws governing recovery of damages. The clause in this case provides no foreseeability; and, in fact, leaves the final measure of damages up to the determination of the landlord and his attorney.

Secondly, this court recognizes that the relative positions of the landlord and tenant in our present society are so disparate as to make many leases, or their individual provisions, oppressive in nature.

As our Pennsylvania Supreme Court stated in Reitmeyer v. Sprecher, 431 Pa. 284, 290, 243 A. 2d 395, 398 (1968):

"No longer does the average prospective tenant occupy a free bargaining status and no longer does the average landlord-to-be negotiate a lease on an 'arm's-length' basis . . . If our law is to keep in tune with our times we must recognize the present day inferior position of the average tenant vis-a-vis the landlord when it comes to negotiating a lease."

The Pennsylvania Supreme Court determined, in Com. v. Monumental Properties, 459 Pa. 450, 486, 329 A. 2d 812, 820 (1974), that an apartment dweller is, in reality, a consumer of housing services, deserving of protection under the Unfair Trade Practices and Consumer Protection Law of December 17, 1968, P.L. 1224, 73 P.S. §201-1 et seq. The court very explicitly stated in Monumental, supra, p. 830, when considering the terms of a printed form lease, as in this case, that: " "The party seeking to enforce such a contract has the burden of showing that the provisions were explained to the other party and came to his knowledge, and there was in fact a real and voluntary meeting of the minds and not merely an objective meeting."

Defendants here were never made aware of this provision, it was never explained to them, and could not have been understood or contemplated by them.

## IV. CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter and the parties.

2. Plaintiff is entitled to possession of the apartment in question.

3. Plaintiff is entitled to court costs incurred in the magisterial proceeding.

4. All other relief is denied.

## DECREE NISI

And now, April 4, 1979, it is hereby ordered, adjudged and decreed that:

1. Plaintiff is awarded possession of Apartment 1610-B, Patricia Drive, Yeadon, Delaware County, Pa., and defendants shall vacate same.

2. Plaintiff is entitled to court costs of the magisterial proceeding.

3. All other requested relief is denied.

## ORDER

And now, April 4, 1979, the prothonotary is directed to give notice to the attorneys of record of the filing of the above decree nisi; if no exceptions are filed thereto 20 days after service of such notice, the prothonotary shall enter, upon praecipe, the said decree nisi as a final decree.