## Bussman *et al. versus* Ganster.

72   285
d 22 SC ¹348

1. Under a lease of land on which there is a building, with an express covenant to pay rent, the destruction of the building by fire, although the lessor may have received the insurance-money, is no defence for the lessee against the payment of the rent.

2. An agreement with B. was that G. would erect a store-house on his lot, furnish it with counters and other fixtures to the satisfaction of B., to be ready by August 1st, "at a rent of $600 per annum, until April 1st, and thereafter for five years at the rate of $800 per annum, payable monthly." *Held*, that this was a lease of the land as well as the building, with a covenant by the lessee to pay the rent.

[Bussman *v.* Ganster.]

3. No form of words is necessary to create a lease.

4. The requisites to a lease are a term of years, with an estate beginning and ending, granted by the lessor to the lessee.

November 4th 1872. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the District Court of *Allegheny county :* No. 135, to October and November Term 1871.

This was an action of covenant, commenced September 2d 1870, by Joseph Ganster against Frank H. Bussman, Henry Rahe and John Rahe, partners as Bussman, Rahe & Co.

The plaintiff's affidavit of claim was: that the defendants " are justly indebted to affiant in the sum of $133.33, with interest from September 1st 1870 ; the same being two months' rent, to wit, the months of July and August 1870, of a lot of ground 24 feet by 68 or 70 feet, situate in East Liberty, &c., which this affiant, on the 9th day of April 1868, demised and let unto the said F. H. Bussman, Henry Rahe and John Rahe, partners, &c., at the annual rent of $600, until the 1st day of April 1869, and thereafter for the term of five years at the rate of $800 per annum, payable monthly, with the option to said lessees of continuing said lease for five additional years at the same rent, payable as aforesaid ; a true copy of which said lease is hereto annexed and made part of this affidavit. Affiant further says, that the said lease was duly signed and sealed and delivered by this affiant on his part and behalf, and the same was signed, sealed and delivered by the defendants, by the said Henry Rahe on the part and behalf of the said defendants, and at the instance and request of the said Frank H. Bussman and John Rahe, and for himself, the said Henry Rahe. And in pursuance of said demise the said defendants, Bussman, Rahe & Co., entered into and took possession of said premises, and said defendants have at sundry times since paid to affiant the rent thereof up till July 1st 1870 ; and on the said 1st day of September 1870, two months' rent thereof became and was due and payable, and still in arrear and unpaid."

The agreement was as follows :—

" This agreement, made the 9th day of April 1868, between Joseph Ganster of the one part, and Bussman, Rahe & Co., of the other part, witnesseth, that the party of the first part has agreed to erect a store-house in front of his own house, on the Negley lot in East Liberty, of the following dimensions, calculated for a storehouse for groceries, dry goods, &c., and furnish the same with counters, shelving and other fixtures, to the satisfaction of the parties of the second part, viz. : twenty-four feet by sixty-eight or seventy feet, as may suit said Ganster, two stories high; * * * and to be ready by the first of August, or as much sooner as practicable, at the rent of six hundred dollars per annum, until the first of April 1869, and thereafter, for the term of five years,

[Bussman *v.* Ganster.]

at the rate of eight hundred dollars per annum, the rent to be paid monthly; and to have stable-room during the term for two horses ; and the parties of the second part to have the option of continuing in the said premises for five additional years, at the same rent, payable as aforesaid. The parties of second part to give the party of the first part three months'*notice of their option ; and if the party of the first part wish to sell the property, the party of the second part to have the first offer and preference, on equal terms to any other purchaser.

"Witness our hands and seals the day and year first above written.　　　　　　　　　"Joseph Ganster,　　　[L. S.]

"Attest :　　　　　　　　　　"Bussman, Rahe & Co.,　[L. S.]

"Thomas Davison,
"Frank Henry Bussman,
"Henry Rahe,
"John Rahe."

The affidavit of defence made by Henry Rahe was :—

"That this affiant (for himself as well as for the other parties sued) has a just and true defence to the whole of plaintiff's claim (with the exception of four days' rent), in this, to wit, that said defendants were induced by plaintiff and by his agreement to give the high rent of $800 per annum in consideration of the long term specified in said contract, and by his agreement to build said store-house and to give them the use and occupancy thereof from and after the first of April 1869, for the term of five years, and to have stable-room during said term for two horses, in plaintiff's own stable on adjoining premises, and to have the option of five additional years' use and occupancy of said building and premises, at the said increased and high rent of $800 per annum.

"2. That although the plaintiff did erect said store-house, and this affiant did use and occupy the same, from about November or December 1868, until the 4th of July 1870, and did carry on his business therein, paying the stipulated monthly rent, yet on the said 4th day of July 1870, the said store-house was burnt and destroyed, whereby the plaintiff is prevented from justly demanding the said rent, as claimed, and has therefore, as specified, no lawful or just demand upon this affiant, or said defendants, and until the plaintiff rebuilds said store-house, according to his agreement, promises and undertakings.

"3. That plaintiff also, by his implied agreement and covenant as aforesaid in consideration of the increased and high rent of $800 was and is bound to give this affiant (or said defendants) the use, occupancy and enjoyment of a store-house, as specified in said contract, for the term of five years from and after the 1st of April 1869, with the option of five additional years, with stable-room as aforesaid, and is also justly bound to rebuild said store-house before he can recover said rent, as claimed.

[Bussman *v.* Ganster.]

" 4. That plaintiff had received $6000 or about that amount, as affiant has been informed, believes and expects to prove, of insurance upon the said store-house, shelves, counters, &c.

" 5. That after the fire the insurance agent, as affiant has been informed, believes and expects to prove, offered to the plaintiff to rebuild said store-house and to reconstruct the same as good as it was before the fire, which proposal the plaintiff unjustly refused.

" 6. That this affiant also offered to plaintiff to reconstruct the said store-house and to make it as good and useful as before the fire, if plaintiff would pay therefor the money he received from the insurance company or companies, to wit, about $5100, the full rent in that event to be paid to plaintiff without any deduction from the 4th of July 1870, which proposition the plaintiff unjustly refused.

" 7. That this affiant and said defendants are perfectly willing, and offer now to pay to plaintiff a just and fair proportion of said rent, as ground-rent.

" 8. That plaintiff, contrary to his covenants and agreements, unjustly withholds the amount, as aforesaid, received by him for the insurance, and utterly refuses to rebuild or to give defendants the use, occupancy, benefit and enjoyment of a store-house for his business, as honestly agreed upon."

On the 8th of March 1871, judgment was entered for plaintiff for want of a sufficient affidavit of defence, and liquidated at $138.20.

This was assigned for error on the removal of the record to the Supreme Court by the defendants.

*A. M. Brown*, for plaintiffs in error.—The consideration upon which the obligation to pay rent rests has wholly failed, and the lessees not being bound to rebuild or restore the premises, should not, in equity and good conscience, be compelled to pay rent. When the subject-matter of the demise is entirely destroyed, the lease perishes with it: Taylor's Landlord and Tenant, sec. 520; Kerr *v.* The Merchants' Exchange Co., 3 Edwards' Chancery Reports 316; Graves *v.* Berdan, 29 New York Reps. 498. We concede that if the contract was the lease of a lot of ground with a building upon it, and contained an express covenant to pay the rent, or a covenant to repair, the rule would be different. But where, as in this case, the lease is of a store-room upon the premises occupied by the lessor as a residence, and the lessees have not covenanted to repair the premises, the law will excuse them from the payment of rent, upon the accidental destruction of the property demised.

*S. A. McClung*, for defendant in error.—No particular words are necessary to constitute a covenant to pay rent. It is sufficient

[Bussman v. Ganster.]

if they show an intention of the parties to bind themselves to the performance of the matters stipulated: Smith's Land. and Tenant 96; Royer v. Ake, 3 Penn. R. 461; Giles v. Hooper, Carth. 135. John Rahe and Frank Bussman were present at the execution and delivery of the lease, and they signed it as subscribing witnesses. Henry's execution is therefore good for both, though only sealed by one: Ball v. Dunsterville, 4 Term 313; Bond v. Aitken, 6 W. & S. 165: Bowman v. Robb, 6 Barr 302. The lessees are not released from the payment of the rent after the destruction of the demised premises by fire; Magaw v. Lambert, 3 Barr 444; Platt on Covenants 197; 1 Story's Eq. Jur., secs. 101, 102.

The opinion of the court was delivered, November 15th 1872, by SHARSWOOD, J.—It has not been and cannot be controverted that if the instrument of writing, a copy of which was filed in the court below, was a lease of the land with the building erected thereon, and contained an express covenant to pay the rent, the destruction of the building by fire, even though the lessor had insured the building and had received the insurance-money thereon, constituted no defence, either in law or equity, to an action of covenant to recover the stipulated rent; Pollard v. Shaaffer, 1 Dall. 210; Magaw v. Lambert, 3 Barr 444; Fisher v. Milliken, 8 Id. 121; Dyer v. Wightman, 16 P. F. Smith 427. Even in the case of a lease of chattels with a house, where the chattels are all destroyed without any fault of the tenant, the better opinion seems to be that it affords no ground of defence *pro tanto*. For in Taverner's Case, 1 Dyer 55–6, there was a lease of land and a flock of sheep at a certain rent, and all the sheep died, though the point was not actually decided, the doctrine was asserted that such loss of enjoyment did not relieve the tenant. This is cited with approbation by Mr. Justice Strong in Workman v. Mifflin, 6 Casey 370, and many other authorities, both in law and in equity, adduced in support of the general principle. Indeed in Fisher v. Milliken, 8 Barr 120, Mr. Chief Justice Gibson lays it down broadly that nothing but a surrender, a release or an eviction can in whole, or in part, absolve the tenant from the obligation of his covenant to pay the rent.

That the agreement in question was a lease of the land as well as of the building thereon, we think is very manifest. It would be a mere refinement to escape the application of a clear rule of law, which may operate hardly on these plaintiffs in error in this instance, to hold otherwise. We are bound to stand *super antiquas vias*, and not to stray aside into unknown by-paths which may lead we cannot tell where. No form of words is required to constitute a lease: Moore v. Miller, 8 Barr 272. "It is not necessary," says Mr. Justice Coulter, "that the term *lease* should be used. Whatever is equivalent will be equally available. If the

22 P. F. SMITH—19

words assume the form of a license, covenant or agreement, and the other requisites of a lease are present, they will be sufficient." These requisites are a term of years with a certain beginning and ending granted by the lessor to the lessee.

By the agreement in suit, Ganster agreed as the party of one part, with Bussman, Rahe & Company as parties of the second part, to erect a store-house in front of his own house, on the Negley lot in East Liberty, and to furnish the same with counters, shelving and other fixtures, to be ready by the 1st of August 1868, or as much sooner as practicable, at the rent of $600 until the 1st of April 1869, and thereafter, for the term of five years, at the rate of $800 per annum. It is true that there are here no formal words of demise, but it is very manifest that after the erection of the building, there was created a term of years in the premises with a certain commencement and a certain termination; in short with all the requisites of a demise. Ought there to be any doubt that if this was a demise of the buildings when erected it was also a demise of the ground upon which it stood? Had the goods on the premises been distrained by the lessor for arrears of rent, would the tenants have been heard for a moment to allege that the distress was unlawful because the rent did not issue out of the land? We think not. Not only does the instrument expressly recognise "the Negley lot in East Liberty," or at least so much as the house would occupy as part of the premises demised, but can there remain any doubt of it when it goes on expressly to provide that "if the party of the first part wish to sell the property, the party of the second part to have the first offer and preference, on equal terms to any other purchaser?" What property? Certainly the demised premises, and certainly not the building without the lot on which it was erected. The plaintiffs in error expressly recognise and admit that they continued to be tenants of the land after the fire, for they offer in the affidavit of defence to pay to the defendant a just and fair proportion of the rent reserved as ground-rent. The consideration of the acceptance of the lease originally, undoubtedly was the erection of the store-house, and furnishing it with shelves, counters and other fixtures, in the manner prescribed, and had this not been done the lease would never have gone into effect, and the lessees would not have been bound to pay rent. It was a condition precedent. But the house was erected and furnished with fixtures to the satisfaction of the lessees, and they took possession and paid the rent up to the time of the fire. It is not easy to perceive how the case would have been different, if the house had actually been built and furnished before the agreement for the lease was made.

Nor can it, we think, be successfully maintained that there was not in this lease an express covenant by the lessees to pay the rent during the term. It is well settled by authority that in the case

[Bussman *v.* Ganster.]

of an indenture or deed executed by both the lessor and lessee, which this was, a covenant to pay the rent therein reserved arises on the words *yielding and paying :* Royer *v.* Ake, 3 Penna. Rep. 464. It is expressly said in this lease, *the rent to be paid monthly.* To be paid by whom ? Surely by the lessees, the parties of the second part executing the instrument. When therefore they as such parties accept the demise of the premises at a certain annual rent, *the rent to be paid monthly,* it is an express covenant by them to pay the rent, quite as much so as would have been the words *yielding and paying,* which do not say expressly by the lessee, and are therefore no stronger than the words used in this case.

As to the point made, that the agreement appears to have been executed under seal in the firm name, it is enough to say that all the partners sign individually as attesting witnesses, which necessarily implies that they were present assenting to and authorizing the execution ; and nothing is better settled than that in such case the partnership is bound : Bond *v.* Aitkin, 6 W. & S. 165. Besides which the affidavit of defence did not aver that the execution by one partner had been without express authority from the others.      Judgment affirmed.

AGNEW, J.—I dissent. I think the true purpose of the contract was the building of the house and its occupancy.