## Wood *v.* Carson, Appellant.

*Leases—Parol variance—Contemporaneous agreement—Repairs —Water supply—Evidence.*

1. Where in an action for the recovery of unpaid rent the defense was that, prior to and contemporaneously with the execution of the lease, and as the inducement therefor plaintiff verbally agreed to make certain repairs, and represented that there were five good wells of water on the premises, and that the supply would be ample for the defendant's business, but the repairs were not made and it appeared that there was only one well on the premises, binding instructions were properly given for

the plaintiff where it appeared that the defendant himself had drafted the lease but gave no explanation as to why the alleged parol agreement had been omitted therefrom; that the only mention of repairs in the lease placed the duty of making repairs upon the lessee; that the testimony was vague and indefinite as to what conversation took place on the day of the execution of the lease, and that it did not appear that plaintiff was personally present, or that his son, who carried the lease already executed to the defendant, was authorized to enter into a parol contract on behalf of his father; and it further appeared that all that was said at that time in relation to the water supply was that defendant mentioned to the plaintiff's son that the lessor "assures us that we are getting a good plenty of water," and the son replied, "there are five wells of good water here, and you will have a sufficiency."

2. In the absence of an express agreement, there is no implied obligation on the landlord to repair demised premises, nor does he impliedly undertake that they are fit for the purposes for which they are rented.

Wolfe v. Arrott, 109 Pa. 473, distinguished.

Argued March 20, 1917. Appeal, No. 389, Jan. T., 1916, by defendant, from judgment of C. P. No. 3, Philadelphia Co., Dec. T., 1901, No. 2302, on directed verdict for plaintiff in case of John S. Wood v. John W. Carson. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for unpaid rent. Before McMICHAEL, P. J. The opinion of the Supreme Court states the facts.

Verdict for the plaintiff by direction of the court for $1,877.60, and judgment thereon. Defendant appealed.

*Error assigned*, among others, was in giving binding instructions for the plaintiff.

*Robert Mair*, with him *Wayne P. Rambo* and *Ormond Rambo*, for appellant.—The existence of a contemporaneous parol agreement, under the influence of which a contract is signed, may always be shown when the enforcement of the paper is attempted in disregard of the parol stipulation, and this is so although such oral stip-

ulation was not omitted from the writing through fraud, accident or mistake: Clinch Valley Coal & Iron Co. to use of Grove & McCall, Trustees, v. Willing, 180 Pa. 165; Ferguson v. Rafferty, 128 Pa. 337; Wolfe v. Arrott, 109 Pa. 473; Gandy v. Weckerly, 225 Pa. 285.

*Frank R. Shattuck,* for appellee.—Defendant's evidence was insufficient to establish a contemporaneous oral agreement on the question of water supply and repairs.

There is no implied warranty that the premises are fit for the purposes for which they are rented: Hazlett v. Powell, 30 Pa. 293.

The failure of the landlord to fulfil his express agreement to put the premises in repairs is no defense to an action for rent: Tibbits v. Percy & L'Amoraux, 24 Barb. (N. Y.) 39; Watts v. Coffin, 11 Johns. (N. Y.) 495.

A landlord's failure to keep his express covenant to repair does not justify the tenant in abandoning the premises.

OPINION BY MR. JUSTICE MOSCHZISKER, April 16, 1917:

May 13, 1899, plaintiff and defendant entered into a written contract whereby the latter leased from the former a lot of ground with the buildings thereon, for a term of five years from June 1, 1899, at an annual rent of $1,500, payable in equal monthly installments. Defendant remained in possession of the demised premises until August 31, 1901, when, having paid in full to that date, he removed therefrom. The property remained untenanted for about eight months, and the present action was brought to recover the rent which accrued during that period. At trial binding instructions were given for plaintiff, who recovered a verdict for $1,877.60; judgment was entered accordingly, and the tenant has appealed.

Defendant, who is in the dye business, alleges that, prior to and contemporaneously with the execution of

the lease sued upon, he and the plaintiff entered into a verbal contract, whereby the latter agreed to make certain repairs to the demised property, so as to render it suitable for use as a dye house; further, that plaintiff represented to him there were five good wells of water on the premises, which would furnish a supply ample for the needs and requirements of defendant's business; that the agreement and representations in question induced defendant to sign the lease; but that the plaintiff failed to make the promised repairs, and, instead of five good wells of water, there was but one, which did not meet defendant's needs and requirements; finally, that, after repeated demands upon plaintiff, the latter refused either to make the repairs called for in the prior and contemporaneous parol agreement, or to do anything toward furnishing the quantity of water necessary for defendant's dye house; and that, for these reasons, he was obliged to and did remove from the leased premises.

At trial, however, the defendant failed to prove the grounds upon which he relied. In the first place, he admitted that the lease was drafted by him, and not by the plaintiff; but he gave no explanation as to why the alleged parol agreement had been omitted therefrom, the only mention of repairs in the written contract being an express provision that the lessee should keep the property in good condition, and so deliver it to the lessor at the end of the term, "reasonable wear and tear excepted." Next, while the defendant produced testimony to show that, weeks prior to the execution of the lease, on an occasion when he viewed the buildings, there had been some conversation concerning the repairs which he desired, should he rent the property, yet he failed to show that any contract to make these repairs was entered into either at that time or when the lease was subsequently executed and delivered. As to what took place at the latter date, the testimony is not only too vague and indefinite to prove a contract to make any certain repairs, but defendant did not even offer to prove that

the plaintiff, John S. Wood (then alive, but now deceased), was actually present at the time; furthermore, he failed to show that the plaintiff's son, James L. Wood, who he testified brought the lease to him already executed by the lessor, was duly authorized to enter into a parol contract such as the one alleged, on behalf of his father.

When we come to consider the subject of the water supply, the defendant's case is even weaker; for it appears that, while there was more or less prior talk concerning the wells, yet at the time of the execution and delivery of the lease, all that was said upon the matter was this: the defendant mentioned to the plaintiff's son, "He [the lessor] assures us that we are getting a good plenty of water," and James L. Wood replied, "Yes, sir, there are five wells of good water here, and you will have a sufficiency." The lease contains no mention of the water supply, and there was no testimony to show that the defendant at any time informed the plaintiff how much he required for his business, or that the latter ever in any manner represented or contracted to give him any fixed quantity.

James L. Wood, who appeared as a witness for the plaintiff, admitted that his father had agreed to certain enumerated repairs, but stated all these had been made, and we find no contradiction of this testimony; moreover, Mr. Wood did not say there had been a contract for any repairs whatever, but he designated the result of the various conversations on that subject simply as an "understanding." In addition, we find nothing in this witness's testimony from which it appears that he was authorized by his father to enter into contracts on the latter's behalf; nor are there any other proofs in the case which would justify a finding to that effect.

Under all the circumstances, the trial judge committed no error in refusing to permit testimony concerning the consequences of the nonfulfilment of the alleged contemporaneous contract for repairs or of the lack of a proper

water supply, nor did he err in striking out evidence concerning conversations on these subjects alleged to have been held some weeks prior to the execution and delivery of the lease or months subsequent to that date. We have, however, considered all the printed testimony, stricken out or otherwise, and also the offers refused; and, after so doing, we see no reversible error in the ultimate conclusion reached by the court below.

The authorities relied upon by the defendant in no sense rule here. Wolfe v. Arrott, 109 Pa. 473, 477, stands on its own facts; there the landlord not only assured the tenant that certain conditions existed, but "guaranteed" such to be the case, and, "in consideration of these assurances and guaranty," the tenant signed the lease. Then again, in that case, it was not held that the lessee was entitled to remove from the premises and stop paying rent, but only that he had a right to deduct from the rent due the amount which, after demands upon the landlord to make good his guaranty, he had been obliged to pay out in order to render the leased premises habitable. The only subsequent report in which we find Wolfe v. Arrott mentioned, is Moore v. Gardiner, 161 Pa. 175, 177, where the former case is distinguished; in the latter, we affirmed a judgment for the plaintiff under circumstances somewhat like those at bar, saying that it was not of "any avail to allege certain verbal communications between the parties prior to and at the time of the execution of the lease," since "they were not incorporated into the lease and there were no facts in evidence which would justify the alteration of the lease so as to include them."

In Smith v. Harvey, 4 Pa. Superior Ct. 377, 380, relied upon by the appellant, the tenant had actually refused to sign the lease, on the ground that there was no provision contained therein as to the certainty of the water supply; whereupon the landlord said, "We will consider it the same as though it was in there, and I promise you that any shortage of water shall be remedied

at once," which assurance and promise then and there induced the defendant to sign.

There is no sufficient evidence at bar to take the present case out of the general rule stated by Mr. Justice SHARSWOOD in Moore v. Weber, 71 Pa. 429, 432, that "the lessee's eyes are his bargain; he is bound to examine the premises he rents, and secure himself by covenants to repair"; or, as further stated by President Judge RICE, in Davis v. Pierce, 52 Pa. Superior Ct. 615, 617, "in the absence of an express agreement, there is no implied obligation on the landlord to repair demised premises, nor does he impliedly undertake that they are fit for the purposes for which they are rented."

The assignments of error are all overruled, and the judgment is affirmed.