Irish, Trustee, et al. *v.* Rosenbaum Company of Pittsburgh, Appellant.

Argued September 28, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Chas. H. Sachs,* of *Sachs & Caplan,* for appellant.

*Mahlon E. Lewis,* of *Stewart & Lewis,* with him *Harold R. Schmidt,* for appellees.

OPINION BY MR. JUSTICE DREW, November 22, 1943:

This action was brought by Franklin C. Irish, Trustee, et al., owners of certain real estate in downtown Pittsburgh, against their tenant, Rosenbaum Company of Pittsburgh, to recover rent alleged to be due under written lease agreements. The tenant in its affidavit of defense, by way of new matter, claims a set-off for money spent in making admittedly necessary repairs to the building on the demised premises. The owners entered a rule for judgment for want of a sufficient affidavit of defense, which the learned court below, after argument, made absolute. From the judgment entered in favor of the owners for the full amount of their claim, this appeal was taken by the tenant, Rosenbaum Company of Pittsburgh.

The pleadings show the following pertinent facts: the original lessors, predecessors in title to the present owners, in December, 1912, entered into three lease agreements, all of which are identical with the exception of the names of lessors, the description of the leased property, and the rents payable thereunder, covering the real estate with which we are here concerned, with Rosenbaum Company — not appellant. These leases, among other things, provided that the tenant, at its own expense, would remove the old buildings, then on the property, and would erect thereon, according to plans and specifications to be approved by the owners, a twelve story building suitable for department store purposes, at a cost of $350,000.00. It was agreed that the term of the leases was to be 35 years, with certain optional rights of extension, at a fixed amount of rent. The tenant complied with the terms of the lease agreements, removed the old structures and erected a thirteen story building, which is now occupied by appellant, successor of the original lessee.

Sometime prior to 1933, the ownership of Rosenbaum Company, the original lessee, was acquired by National Department Stores, Inc., and following the failure of

that corporation in 1933, Rosenbaum Company was operated by receivers until 1936. At that time there was effected a plan of reorganization, a part of which was an agreement between the owners of the real estate here in question and National Department Stores, Inc., on January 18, 1936, whereby the leases were modified and amended. The new lease agreement provided, inter alia, as follows: "The intent of this agreement is only to modify, change and amend those provisions of the original leases as herein specified; except as herein especially modified, changed and amended, all the terms, covenants and conditions of said original leases shall remain in full force and effect.". It was also agreed therein that after the execution of this modification agreement the lease was to be assigned to this appellant, which corporation was to have all the rights and privileges, and be personally bound to perform all the covenants of the lessee. On January 30, 1936, National Department Stores, Inc. assigned the modified lease agreement to appellant, the present tenant, which in turn accepted the same in accordance with its terms, covenants and conditions.

On October 2, 1941, the Bureau of Building Inspection of the City of Pittsburgh, by letter, notified appellant that certain parapet walls and cornice of its building, which were broken, loose and might fall, must be repaired within thirty days, or the structure would be condemned; and on October 27, 1941, a copy of that notice was sent to the owners. On October 30, 1941, the Bureau wrote to appellant and the owners again calling attention to the fact that the building was in a dangerous condition and must be repaired.

Following the receipt of the first of these notices, a controversy arose between the owners and appellant as to which one of them was obligated to make and pay for the required repairs. Appellant advised the owners that it was their obligation and if they did not correct the condition, it would cause the work to be done for the account of the owners and deduct any expenses incurred

from the rent due them. The owners, contending that appellant was liable under the original and modified leases, through their counsel, replied that they would hold appellant responsible for whatever cost or damage that might occur from its failure to comply with the demands of the municipal authorities, and further stated: "Without intending to prejudice any of our clients' rights in this matter and without in any way admitting any liability whatsoever, we accede to your statement that you will cause the physical condition to be corrected, and while we do not admit that it will be done for the account of our clients, we feel that the matter of responsibility can be determined subsequently to the doing of the work." Appellant accordingly had the walls and cornice repaired on or about December 2, 1941, at a cost of $36,-672.99, and thereafter withheld that amount from the rent due and payable. The owners, still insisting that there was no obligation on them to pay for the repairs, instituted this suit.

The sole question to be answered is—Who, as between the landlord and the tenant, under the facts here presented, is liable for the cost of these repairs?

It is well settled in this Commonwealth that no implied covenant rises out of the relationship of landlord and tenant which requires the landlord to repair: *Levine v. McClenathan*, 246 Pa. 374, 92 A. 317; *Wood v. Carson*, 257 Pa. 522, 101 A. 811; *Federal Metal Bed Co. v. Alpha Sign Co.*, 289 Pa. 175, 137 A. 189. There is no express covenant on the part of the owners in the instant case, in either the original or modified leases, to make repairs to the building, and therefore there is no duty upon them to make or pay for the repairs in question.

Moreover, an examination of the original leases and the modification agreement shows an express covenant on the part of appellant to make the repairs. The original leases provide, inter alia: "Lessee will, during the term, keep, and at the expiration thereof, deliver up, without further notice, the said premises in as good order

and condition as the same are at the time of the completion of the proposed new building, reasonable wear and tear, not occurring through Lessee's negligence, excepted." This covenant placed an affirmative burden upon appellant, which by assignment had assumed all the obligations of the original leases, to make all necessary repairs, to protect and preserve the building from waste and ruin. In *Wade v. Pittsburg Mach. Tool Co.,* 40 Pa. Superior Ct. 365, where the tenant covenanted to "yield up the said premises in as good and sufficient repair as when received (reasonable wear and tear and accident by fire and other causes excepted)", the Superior Court affirmed the following statement contained in the charge: ". . . we say to you, as a matter of law, that it was the duty of the defendant [the tenant] to make certain repairs to the house, that is, he was obliged to make necessary repairs, and by necessary repairs we do not mean only such repairs as would keep the building in a tenantable condition for the use of this defendant, but it means more than that; it means such repairs as may be necessary to protect the house from waste and ruin."

That appellant bound itself to make the required repairs is further evidenced by the following provisions contained in the modified lease agreement: "(A) The Lessee agrees to efficiently, diligently and energetically keep, maintain and operate on the property . . . a 'Department Store' . . . The Lessee hereby expressly agrees that said store shall be open for business during regular business hours every business day, during the term of said leases or extensions thereof, except on days prevented by accident and Acts of God and except for the usual and customary closing in case of deaths of officers or executives during funerals"; and "(T) . . . all operating and property maintenance charges, including water rents, liability and glass insurance shall be paid by the Lessee." In order for the tenant to "keep, maintain and operate on the property" a department store, it bound itself to make all necessary repairs which the

maintenance of a department store building and business would require. Furthermore, the covenant that "said store shall be open for business . . . every business day" places the responsibility upon the tenant to do all those things, including making such repairs as those with which we are here concerned, which are necessary to operate the establishment every day. If the repairs to the parapet walls and cornice had not been made, the city authorities would have condemned the building and closed the store. Closing because of condemnation does not come within any of the specified exceptions, and, therefore, under the maxim "expressio unius est exclusio alterius", the tenant must bear the expense incident to removing the hazardous condition of the building. This conclusion is also fortified by the fact that these repairs fall within the definition of "property maintenance charges" which the tenant expressly agreed to pay.

The leases determine the law of the case and when properly interpreted they definitely place the obligation to repair on the tenant—this appellant.

Judgment affirmed.