**ROTTE, Appellant, v. MEIERJOHAN, Appellee.**

Ohio Appeals, First District, Hamilton County.

No. 6675—Decided July 1, 1946.

John C. McCarthy, Cincinnati, for Appellant.
Nathan Solinger, Cincinnati, for Appellee.

**OPINION**

By THE COURT:

The plaintiff and defendant were tenant and landlord. The plaintiff sued to recover damages on account of personal injuries received by him, as a direct result of the failure of defendant to perform his duty as a landlord. A verdict for the plaintiff was returned, and, on the defendant's motion, the court rendered judgment in his favor notwithstanding the verdict. The reasons for the court's action and the authorities upon which he relied were set forth in the opinion handed down at the time, from which we quote:—

"The facts indicate that sometime prior to August 20, 1943, the defendants purchased an apartment building on Southern Avenue in Cincinnati and that at the time of the purchase the plaintiff and the members of his family occupied a third floor front apartment in the building under an oral month to month arrangement. No evidence was offered on behalf of the plaintiff to prove that the original owner, or the defendant as the subsequent landlord, retained any control over the premises rented to the plaintiff or agreed to make repairs on said premises. There was evidence that on a few occasions a caretaker of the defendant, upon ·request of the plaintiff, made minor plumbing and other repairs which, as stated, were not made under any agreement upon the part of the defendant, to make such repairs.

The law is clear that in a case in which repairs are voluntarily made by the landlord, such fact is not an admission of liability on his part to make repairs generally and to keep the premises in repair. **36 C. J., p. 209.**

We must now consider whether or not under the facts of this case and the law pertaining thereto the metal iron guard described in the petition was part of the premises leased to the plaintiff. If it was part of the leased premises there was no obligation on the part of the defendant to repair it. If it was not part of the leased premises and the defendant retained possession and control over it then it was his duty to exercise ordinary care to keep the same in a reasonably safe condition.

The facts show that the building in question was an old fashioned, semi-obsolete type structure in which the front windows began near the ceiling and extended to within about seven inches from the floor. Before the defendant purchased the property a metal iron guard had been placed across the opening outside a window of the front room of the premises

occupied by the plaintiff, but the evidence does not show how this guard was attached to the window or building, and the record is silent as to any arrangements made by the defendant to take care of or repair the guard. The record is equally silent as to any arrangement of the parties to have the guard included as a part of the leased premises.

The evidence and exhibits do, however, show that there is no porch or other part of the building outside of the front windows of the plaintiff's apartment which are used by the defendant or other tenants of the building, and it is reasonable to infer that the only purpose in constructing the iron guard was to prevent persons or articles within the plaintiff's apartment from falling through the window and to protect those in the yard below from articles which might fall through the window in connection with the use of the apartment by the plaintiff and other tenants of that particular apartment.

The iron guard, therefore, was an integral part of the apartment leased to the plaintiff.

The authorities clearly support this conclusion. The rule is stated in 36 C. J., p. 30, Sec. 632-2, as follows:

'As a general rule everything which beongs to the demised premises or is used with, and appurtenant to, them and which is reasonably essential to their enjoyment passes as an incident to them, unless specifically reserved.'

If the metal guard was part of the premises leased to the plaintiff the defendant, under the facts of this case, was not obligated to repair the same. In the absence of fraud or concealment by the lessor of the condition of the property at the date of the lease, there is no implied warranty that the premises are tenantable or even reasonably suitable for occupation, and the rule of caveat emptor applied. 36 C. J., p. 43, Sec. 659-5; 24 O. Jur., 918."

For the reasons and upon the authorities set forth in the quotation, we affirm the judgment.

HILDEBRANT, PJ, and MATTHEWS, J, concur in opinion and judgment.

ROSS, J., dissents in separate opinion.

ROSS, J, (dissenting):

Appeal on questions of law from a judgment of the Court of Common Peas of Hamilton County in favor of the defendant. The plaintiff filed a petition in the action on June 5, 1944, alleging that the defendant was the owner of certain

premises which plaintiff rented, that a grating or grill across a window in such premises was defective, that his son leaned against such grill, which gave way, and plaintiff, in attempting to save his son, lost his balance and was precipitated to the ground suffering severe injuries for which he seeks compensation.

In his answer the defendant admits the tenancy of the plaintiff and although the petition contained no allegation of covenant to repair, the defendant alleges that no such covenant existed.

Defendant further alleged a mere conclusion of law to the effect that such guard rail was under the sole custody and control of plaintiff as a part of such premises rented by plaintiff.

The defendant also made that wholly irrelevant and immaterial claim of sole negligence.

Stripped of its conclusions and immaterial and irrelevant allegations, the answer consists merely of a denial of negligence on the part of the defendant.

The plaintiff filed no reply to the answer of defendant.

Trial was had to a jury resulting in a verdict in favor of the plaintiff.

Upon motion non obstante veredicto, the Court rendered judgment for the defendant.

Even if the question of covenant to repair was made an issue in the case, which is not found by this Court, there was no evidence of such a covenant.

In addition to the issue of contributory negligence of plaintiff, the only question presented therefore is whether or not the grill or guard was a part of the premises rented by plaintiff or, on the contrary, was under the sole control and custody of the defendant as owner of such premises.

It appears from the evidence, including photographs of the building that the premises rented by plaintiff were located in the third or top floor of the building and were the center of three front apartments, that a metal grill extended across one of the two windows of plaintiff's apartment. This grill was fastened to the brick wall, constituting the front or face of the building. The sides of the grill were fastened to the sides of a recess provided for the window. The grill was outside of the window and some few inches from it. There were in fact two offsets or recesses. The outside recess, being entirely of brick, the inside recess being occupied by the frame work of the window jams. The grill was fastened in the outside recess.

It is apparent, therefore, that the grill work was as much a part of the outside wall as if the brickwork instead of the metal grill had bridged the opening in front of the window. There was no defect in the grill. The fastenings in the wall were insecure.

In **Friedl v Lackman, et al., 136 Oh St., 110,** it is stated that: "the sash cord and all parts of the windows, other than the glass itself, are to be considered as the outside of the building." The limitations of this case are fully recognized, that it involved the construction of a contract and injury to a pedestrian upon the sidewalk. However, the reasoning and conclusion of the Court seem pertinent to the instant question. The defectively fastened grill, therefore, was a part of the outside of the building, and under the control of the owner, who was responsible for the defective condition thereof, of which he had knowledge.

It must be admitted the authorities are not in accord upon the question of whether in the absence of specific agreement the outside walls of a building are to be considered as part of premises rented to a tenant thereof. The situation is not here presented of the renting or leasing of an entire building. Consideration of the law applicable to such situation is not here involved.

Here is presented a building consisting of three stories or floors each of which is divided into a number of apartments. If the contention of the defendant is correct, then this structure is divided into as many sections as there are tenants. These sections consist of compartments, cut out of the whole. The rented premises having outside walls, thus dividing the several faces or sides of the building into as many and large surfaces as each rented apartment occupies with outside wall.

In other words, under the conditions here presented, the faces of the building would consist of a number of individually leased areas, over which the defendant claims he had released control by renting the particular apartment to a tenant.

It seems clear that such position may not be sustained. Each several section of the face of the building is dependent upon the other, either for support or protection. The whole wall or face of the building is in common use by all of the several tenants, whose apartments have outside exposures. No one section of the face of the building, because confining any particular apartment, can be said to be isolated from or independent of the remaining portion of the face of the build-

ing. It must be obvious, therefore, that there being a common use of the face of the building it remains, in the absence of agreement, under the control of the owner, who is responsible for negligence in failing to keep the same in repair.

The evidence clearly shows that the owner, through his agent, had had knowledge of such defective grill which was insecurely fastened for some considerable time.

It does not appear in the record upon what basis the Court set aside the verdict and rendered judgment for the defendant. It is stated in briefs of the defendant that the trial court wrote a ten page opinion in deciding the motion non obstante. Such opinion does not appear among the papers and is not set out in the briefs.

If it was upon the basis of control by the tenant the evidence did not sustain such conclusion. If it was upon the basis of contributory negligence, the evidence did not sustain this conclusion.

Upon the latter point, it appears that the plaintiff was aware of the defective condition of the grill and when the days became warmer raised the lower sash of the window in front of the grill; that the lower side of the window was only a few inches from the floor; that his son, a young child, being attracted by someone on the street leaned against the grill, that it gave way, and that plaintiff, in trying to save his son from falling, lost his balance and fell with his son to the ground below.

Whether the plaintiff was guilty of contributory negligence in leaving the window open, knowing of the defective grill, is, under all the circumstances of the case a question for the jury. Certainly, this Court cannot say as a matter of law that such conduct of plaintiff amounted to contributory negligence. The trial court overruled the motion of defendant for a new trial. In such action, it is my opinion, there was no error.

It appears that the action of the plaintiff in reaching for his child was a mere reflexive movement and was performed without the slightest opportunity for reflection. **Woodward v Gray 46 Oh Ap 177, 185; Pennsylvania Ry. v. Langendorf, 48 Oh St 316; Pittsburgh, C. C. & St. L. Ry Co. v Lynch, 69 Oh St 123.**

The judgment in my opinion should be reversed and judgment should be entered for the plaintiff upon the verdict.