López, Appellant, *v.* Gukenback.

360

Argued November 12, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*A. Leon Higginbotham, Jr.* with him *William H. Brown, III, Doris M. Harris* and *Norris, Schmidt, Green, Harris & Higginbotham,* for appellants.

*John J. Tinaglia,* with him *Michael A. Foley,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, January 16, 1958:

This is an appeal from the refusal of the court below to take off a judgment of compulsory nonsuit entered in an action for damages for personal injuries.

On this review we adhere to the rule that on an appeal from a refusal to take off a compulsory nonsuit we must view the evidence and all reasonable inferences arising therefrom in the light most favorable to the plaintiffs (appellants): *Auel v. White,* 389 Pa. 208, 210, 132 A. 2d 350; *Layman v. Gearhart,* 389 Pa. 187, 190, 191, 132 A. 2d 228; *Seng v. American Stores Co.,* 384 Pa. 338, 121 A. 2d 123; *Finnin v. Neubert,* 378 Pa. 40, 41, 42, 105 A. 2d 77.

In September 1953 appellants leased[1] a two-room—bedroom and kitchen—apartment for themselves and their six children on the second floor of a building owned by appellee. This building—three story in height and located at 1724 Wallace Street, Philadelphia—contained six apartments.

Approximately two months later—November 8, 1953—while in the bedroom, the wife-appellant heard her husband shouting to her from the kitchen: "rush to the windows, put the windows up, that the children are being overcome with gas . . ." and she rushed to the window, lifted it and the window glass fell on her right hand and wrist inflicting very serious injuries.

At the time appellants leased the apartment this window—one of two bedroom windows—was cracked; there was a one-inch hole in the center of the window glass and two cracks extending the full width of the lower pane, the cracks being in the shape of a cross. The window frame appeared old and the putty very dry. Each week as the husband-appellant paid his rent he told the appellee's agent of the condition of the window and glass; on several occasions the appellee's agent

---

[1] The lease was an oral lease.

promised to repair the defective condition. The appellants were aware of the window's condition when they rented the apartment and throughout the weeks which followed. During appellants' occupancy of the apartment prior to the accident the window was never opened.

When the court below granted the compulsory nonsuit exceptions were properly and promptly filed. Thereafter the court refused appellants' motion to take off the compulsory nonsuit and this appeal ensued.

Appellants' argument is twofold: (1) that the appellee, by his failure to file an answer to the complaint, admitted possession and control of the window; (2) that, under the facts of the case, appellee was shown to be in possession and control of the window and the court should have submitted that issue to the jury.

Pa. R.C.P. 1045(a) provides as follows: "(a) A party who fails to file a responsive pleading shall be deemed to admit all averments relating to the identity of the person by whom a material act was committed, the agency or employment of such person or the ownership, possession or control of the property or instrumentality involved. All other averments shall be deemed to be denied."

This rule draws a distinction between *averments;* it classifies the *averments* which do and the *averments* which do not require responsive pleading. The clear import of the rule is that before *any* responsive pleading is required there must be an *averment.* Failure to file a responsive pleading does not constitute an admission of an unvoiced charge; a response or answer presupposes a charge or accusation made. Absent an *averment* of any fact delineated by the rule as requiring a responsive pleading, a failure to respond does not

amount to an admission.[2]  Did appellants *aver* that the appellee owned, possessed or controlled the "property or instrumentality" involved, to wit, the window?

An examination of the complaint reveals that appellants did aver appellee's ownership of the building; therefore, appellee, by failing to respond to this averment, is deemed to have admitted ownership of the building.  However, appellants did not *expressly* aver either possession or control of the window by appellee. Appellants rely on implications from Paragraph 8 of the complaint to establish an averment of both possession and control of the window.  Paragraph 8 alleges that appellants notified appellee through his named agent of the defective condition of the window, and that the appellee, through the said agent, promised and agreed to make the necessary repairs.  From this, appellants argue: "Inherent in such allegation of agency is the fact that the agent was in control of the window, and, therefore, had the right to make such promise to repair or that the agent was assuming control by the fact of making such offers" and, in the absence of any denial by the appellee that his agent had the authority to be in control of the defective window, control and possession are thus admitted.  We acknowledge the ingenuity, but not the soundness of this argument.

Even though the appellee himself, rather than his agent, had agreed to repair this window, such an agreement, even if proved, let alone averred, would neither impose upon appellee a tort liability to appellants nor indicate a retention of possession or control of the

---

[2] "If the Complaint does not aver identity, ownership, possession or control there cannot, of course, be any admission of these": Goodrich-Amram Standard Penna. Practice, §1045(b)-1, p. 289; *Smith v. Lit Brothers*, 174 Pa. Superior Ct. 102, 105, 106, 100 A. 2d 390; *Mazzo v. F. W. Woolworth Co., Inc.*, 139 Pa. Superior Ct. 242, 252, 11 A. 2d 683.

window by him: *Harris et ux. v. Lewistown Trust Co. et al.,* 326 Pa. 145, 147, 148, 149, 191 A. 34. Neither Paragraph 8 nor any other paragraph of the complaint contains any *averment* that the appellee was in possession or control of the window; therefore, the penalty of a deemed admission of possession or control cannot be imposed upon appellee under Pa. R.C.P. 1045(a). This question, although properly and promptly raised in the court below, must be resolved against appellants.

On the question of the general liability of a landlord to his tenant for injuries received by the tenant on the premises certain legal propositions are well settled: (1) in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the premises in repair: *Levin et al. v. Philadelphia,* 277 Pa. 560, 121 A. 331; *Wood v. Carson,* 257 Pa. 522, 101 A. 811; *Levine v. McClenathan,* 246 Pa. 374, 92 A. 317; *Bussman et al. v. Ganster,* 72 Pa. 285; *Smith v. Kravitz,* 173 Pa. Superior Ct. 11, 93 A. 2d 889; *Adler v. Sklaroff,* 154 Pa. Superior Ct. 444, 36 A. 2d 231; (2) a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection: *Irish, Trustee et al. v. Rosenbaum Company of Pittsburgh,* 348 Pa. 194, 34 A. 2d 486; *Stein v. Bell Telephone Co.,* 301 Pa. 107, 151 A. 690; *Federal Metal Bed Co. v. Alpha Sign Co.,* 289 Pa. 175, 137 A. 189; *Levin v. Philadelphia,* supra; (3) a landlord out of possession, however, may be liable (a) where he conceals a dangerous condition of which he has knowledge and of which the tenant has no knowledge or cannot be expected to discover and (b) where he knows or should know of a dangerous condition and leases the premises for a purpose involving a "public use" and has reason to believe the tenant will not first

correct the condition: *Parquet v. Blahunka*, 368 Pa. 626, 84 A. 2d 187; *Doyle, Admrx. et al. v. Atlantic Refining Company et al.*, 357 Pa. 92, 98, 53 A. 2d 68; *Bouy v. Fidelity-Philadelphia Trust Company et al.*, 338 Pa. 5, 7, 12 A. 2d 7; *Hayden et ux. v. Second National Bank of Allentown*, 331 Pa. 29, 199 A. 218; (4) a landlord of a multiple-tenanted building, reserving control of the common approaches, such as sidewalks, passageways, etc., or parts of the building common to all tenants, such as the roof and walls, is bound to keep such approaches and parts reasonably safe for the use of tenants and their invitees and a landlord becomes liable where he either had actual notice of a defective condition therein or was chargeable with constructive notice, because had he exercised reasonable inspection he would have become aware of it: *Bowser et ux. v. Artman et al.*, 363 Pa. 388, 69 A. 2d 836; *Goodman et al. v. Corn Exchange National Bank and Trust Company et al.*, 331 Pa. 587, 200 A. 642; *Baldwin v. McEldowney*, 324 Pa. 399, 188 A. 154; *Lerner v. Bergdoll*, 285 Pa. 193, 131 A. 670; *Sloan v. Hirsch*, 283 Pa. 230, 128 A. 831; *Williams v. Wolf*, 169 Pa. Superior Ct. 628, 84 A. 2d 215; *Adler v. Sklaroff,* supra; *Germansen v. Egan*, 130 Pa. Superior Ct. 21, 196 A. 881.

Appellants' counsel, conceding the validity of these legal principles, presents a novel and interesting proposition—one of first impression in this Court. This proposition is that the window in appellants' apartment was a part of the wall of the building, and, therefore, in appellee's control and possession so as to render him liable to the appellants because he knew of the window's defective condition.

Is a window located in a tenant's apartment an inherent and integral part of the wall of the building—a defect in which might affect other tenants and parts

of the building—so that control and possession of the window are retained by the landlord rather than the tenant?[3] A window has been defined as "an opening in the wall of a building for admission of light and air, usually closed by casements or sashes containing transparent material, as glass, and capable of being opened and shut": Webster's New International Dictionary (2nd Ed.) (The Merriam-Webster). See also: *Benner v. Benner,* 119 Me. 79, 109 A. 376, 377; *Hale v. Springfield Fire and Marine Insurance Co.,* 46 Mo. App. 508, 510; 2 Bouvier Law Dictionary, p. 3741 (Rawle's 3rd Rev.); American College Dictionary; 97 C.J.S., p. 325. Appellants contend that a window contributes structurally to the support of the building and must be considered part of the wall. The contribution of support, if any, furnished by a window to a building is infinitesimally slight; that a windowless wall will and does support a building is self-evident. Appellants point out that in modern buildings, such as the Penn Center Plaza, glass is used extensively on the exterior portions of the structures. We can take judicial recognition of the fact that modern architecture does utilize and employ glass on the walls and exterior portions of modern day buildings and, perhaps, such glass is so interwoven into the construction of these buildings as to justify a finding that the glass is part of, if not the whole, wall. However, that is definitely not the instant situation because there is no proof that this is a modern day building in which glass has been utilized as in the Penn Center Plaza. What we are dealing with in the instant situation is a regular old-fashioned window—a window placed in a building not

---

[3] That the wall of a building remains in the control and possession of the owner of a multiple-tenancy building has been recognized: *Koplo and Koplo v. Ettenger,* 84 Pa. Superior Ct. 358.

for aesthetic or support purposes, but simply and solely for the function of transmitting light and air into a particular apartment. The glass which fell upon the wife-appellant's hand came from a window and not from a modern glass wall or partition. The presence of this window in the building contributed nothing to, nor had it any functional use in connection with the other apartments or parts of the building; it was not *part of, but simply an opening in the wall* to serve and make livable this particular apartment.

Appellants place great reliance on *Germansen v. Egan,* supra. In that case the building was a multiple-tenancy building. Plaintiff's employer leased from the defendant a workroom in which there was a skylight made of glass. The skylight fell and injured the plaintiff and the Superior Court sustained a recovery by the plaintiff. The theory upon which liability was imposed was clearly expressed by the late President Judge KELLER (p. 23) : "It is established, therefore, that the defendant-landlord used this roof, of which the skylight was a part, to collect and carry away the rain water falling on the rest of her building—the four story part—and was in possession, custody and control of it for the general benefit of her building . . . She alone had authority to repair or improve it. It follows that she was responsible for any damages naturally resulting from her negligent maintenance of the roof and skylight." The *Germansen* case is entirely inapposite. Granted that both a skylight and a window admit light and air, that both are made of glass, that the breaking of glass caused the injury in both cases, that the glass in both instances was cracked before and repaired after the accident, yet there is an essential difference between the two situations. The skylight was integrally part and parcel of the roof, as well as a medium for the entrance of light and air; it was

functionally a component part of the roof. The instant window was primarily a medium for the entry of light and air into this particular apartment; any function, if any, served in connection with the wall was purely incidental. It was the landlord's duty to keep the skylight in repair; there was no duty upon the landlord to keep this window in repair: (Cf: *Rotte v. Meierjohan,* 78 Ohio App. 387, 70 NE 2d 684). The roof of a multiple-tenancy building protects and acts as a common ceiling for all the separate tenements in the building; it is a part of the premises which remains in the landlord's control for the common use of all his tenants: *Adler v. Sklaroff,* supra.

Neither the *Koplo* case, supra, nor the *Adler* case, supra, supports appellants' position. The *Koplo* case simply holds that a landlord exercises control over the exterior wall of a building while the *Adler* case holds a landlord responsible for maintenance of the roof of a building. The argument that because a skylight is a part of a roof a window must be considered part of a wall is a non sequitur.

Appellants cite the Restatement of Torts, §360 as further authority for their position. That section provides as follows: "A possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe." There is absolutely no evidence to support the invocation of this section of the Restatement.

In conclusion, we agree entirely with the court below in its analysis of this situation: "The window in the Lopez apartment was not such an integral part of the wall as to render it under the control of the defendant owner. This window was not necessary for the support of any part of the structure of the building. It does not serve as a common benefit to all occupants of the building, nor may anyone other than the tenant, in whose apartment it is located, use it. The lessees in the case at bar had complete control over the window. Only the lessees had the right or necessity to open, close or put shades on their window. The purpose of an apartment window is to give the tenant and only the particular tenant the benefit of light and ventilation. Actually, the owner of the building or any other occupant of the building could not have demanded that the plaintiffs keep the window open or closed. This window was for the sole use and convenience of the plaintiffs.

"Therefore, there being no possession or control of the window in question by the defendant, he cannot be held liable in tort for injuries received by the wife-plaintiff because of its defective condition."

Judgment affirmed.

Mr. Justice COHEN dissents.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

On November 8, 1953, Mrs. Paula Lopez, while in the bedroom of a two-room apartment, which she occupied with her husband and six children, heard her husband shout from the kitchen: ". . . Rush to the windows, put the windows up, the children are being overcome with gas." She flew to a window, threw up the sash, and in the instant, the glass fell from its frame and gashed her arm severely, causing her eventually

to lose the use of her right hand, fingers, and forearm. The fateful window had been a disturbing factor for some time. From the day, six weeks previously, that Mrs. Lopez and her husband had rented the two rooms from the defendant, Edward W. Gukenback, she had complained that the window was defective: the glass was cracked, the sills rotted, the surrounding putty dry and non-adhering. The renting agents for the defendant promised to repair the window, but never did—until after the accident.

Mrs. Lopez and her husband brought an action against the owner of the building and they were non-suited in the Court below. This Court has affirmed the nonsuit. Was the question of defendant's liability or nonliability under the circumstances a question of fact for the jury to decide, or one for the Court to determine *in limine*?

The building in which the plaintiffs lived is a three-story structure with multiple tenants, and, as well stated by the Majority, the proprietor of such a structure is bound to keep the parts of the building, which are common to all tenants, *such as roofs and walls,* in a reasonably safe condition.

It is the contention of the plaintiffs that the defective window in their apartment formed part of the wall of the building and that, since the landlord is liable for defects in the walls, he is liable to Mrs. Lopez for the serious injuries she sustained. The defendant refutes this contention, and the Majority precisely states the resulting issue as follows: "Is a window located in a tenant's apartment an inherent and integral part of the wall of the building—a defect which might affect other tenants and parts of the building—so that control and possession of the window are retained by the landlord rather than the tenant?"

The Majority answers this question in the negative.

If, prior to today, there had been no decision in the Pennsylvania appellate courts on the question before us, this Court could say, if it so wished, that, examining the entire subject it is satisfied not to take that step which would make landlords liable for a defect in any opening of a building, on the theory that an opening or portal is not part of the building's fundamental structure for which the landlord would be responsible if defective. Or, if, after declaring that a window is not an integral part of the wall of the building, it went further and said that it overruled the authority of the case of *Germansen v. Egan,* 130 Pa. Superior Ct. 21, its logic would then be impeccable, even though it might be said that it had failed to recognize changing conditions.*

But this Court does not overrule the *Germansen* case. It stands squarely upon it, and explains how it differs from this case. Let us see if these two cases can be distinguished one from the other or if they belong, as I believe, under the same roof of landlord lia-

---

* For instance, the Philadelphia Housing Code, approved August 5, 1954, provides: "No person shall occupy as owner occupant or shall let to another for occupancy any dwelling, rooming house, dwelling unit, or rooming unit which does not comply with the following minimum standard for safe and sanitary maintenance: 8.3 Every *window,* exterior door and basement or cellar door and hatchway shall be substantially weathertight, watertight and rodent proof; and *shall be kept in sound working condition and good repair."* Of course, this code was approved after the date of the accident in this case and, therefore, can have no application to the litigation. I cite it only for the purpose of showing the trend of the times. The Multiple Dwelling Law of New York, (Sec. 78, Consolidated Laws, Annotated Book 35-A, as amended, effective April 22, 1946, provides: "Every multiple dwelling including its roof or roofs and every part thereof, and the lot upon which it is situated, shall be kept in good repair. The owner shall be responsible for compliance with the provisions of this section. . . ." (Emphasis supplied).

bility. The plaintiff in the cited case, Miss Germansen, was injured when glass from a skylight, hung over a room rented by her employer from the defendant-owner, fell and injured her. She sued the owner of the building, Mrs. Egan, and obtained a verdict which was affirmed by our Superior Court. In an excellently reasoned opinion, President Judge KELLER, speaking for the Court, pointed out that the defendant Mrs. Egan knew that one of the panes in the skylight was cracked, she knew that snow could accumulate over the skylight, and she knew that the damaged glass would not be strong enough to bear the weight of the snow. He then went on specifically: "She [Mrs. Egan, the defendant] knew that the room under the light well, which she leased to the plaintiff's employer, was a work room occupied by people at work and liable to be injured by a broken skylight, and the duty rested on her as the owner in charge and custody of a building rented to various tenants to see that an instrumentality used for the general benefit of the building was in a reasonably safe condition, and when her attention was drawn to the cracked pane of glass in the skylight she should have been reasonably diligent in replacing it with a sound pane before the accident, as she was immediately after it. Her negligence, in the circumstances, was a question of fact for the jury."

This Court expresses approval of the verdict obtained by Miss Germansen in her case but rejects the claim of Mrs. Lopez in the case at bar. The Majority differentiates the *Germansen* case from the *Lopez* case by stating that a window supplies no functional support to the wall of a building but that a skylight is, in effect, muscle and sinew to a roof. But wherein is the structural difference between a skylight and a window? Viewed from above, below, or the side, a skylight is a window, and nothing more. Webster's In-

ternational Dictionary defines a skylight as "A window in a roof." Thus, it can be correctly said that a skylight is a roof window, while a window is a wall sky- light. Both the skylight and the window receive light from but one source, the sky, that is to say, the sun. If the skylight is an inseparable segment of the roof, as *Germansen* says, and this Court emphasizes, how can it be said that a window does not form part of a wall? A window is as much an integral part of a wall as the skylight is an integral part of the roof. They differ only in that a skylight is horizontal and a window is vertical.

The Majority Opinion, in attempting to distinguish the *Germansen* case from the one at bar, says: "The skylight was integrally part and parcel of the roof, as well as a medium for the entrance of light and air; it was functionally a component part of the roof. The in- stant window was primarily a medium for the entry of light and air into this particular apartment; any func- tion, if any, served in connection with the wall was purely incidental." But can it really be said that the function of a skylight, in serving as part of the roof, is any less incidental than a window supporting a wall? Are they not both indispensable pieces of mo- saic in their respective pictures?

Are they not equally as strong and equally as weak? Will a skylight support the kick of a foot any more than a window can withstand the thrust of a fist? Will an ancient, battered, and cracked skylight be any safer than an ancient, battered, and cracked window? Will a broken skylight sustain the vibration and push of pressure any more than a broken window? In the *Germansen* case the glass fell only because of the snow which had descended on it. No one struck it, no one kicked it, no one pushed it. The skylight gave way because the glass in it was cracked. The window here

374

gave way because the glass in it was cracked. Where is the difference between the two cases?

If the Majority can make of a window something less than part of a wall, it cannot make of a skylight something more than a lamp on the roof.

And so long as a window remains only a medium for light and air and an aperture through which to look at the outside world, I cannot look through it and see in a skylight anything more than that. If *Germansen* is right, the decision in this case is something less than right. If this decision is right, *Germansen* is wrong.

While consistency has ceased to be a jewel, I would still like to see on the escutcheon of the law the shining gem of uniformity between decisions which involve the same principle of jurisprudence.