## Dialesantro *v.* Philadelphia Company, Appellant.

*Negligence—Damages—Tuberculosis—Trial—Evidence.*

1. In an accident case where the plaintiff claims that the tuberculosis from which he was suffering at the time of the trial was caused by the personal injuries which he received four years before and for which he was suing, the trial judge commits reversible error in permitting the jury to pass upon tuberculosis as an element of damages, where there is not a scintilla of evidence to connect the plaintiff's condition at the time of the trial with the personal injuries as a proximate cause.

*Negligence—Gas companies—Parties defendant.*

2. A verdict and judgment against a gas company for personal injuries sustained as the result of an explosion of gas, will not be reversed on the ground that another company was in fact the owner of the pipe where the gas exploded, where the evidence shows that the two companies were so intimately associated in their management that it was difficult to decide where the authority of one ended and the other began, and it appears that the employees of the company sued repaired the break, and that the district in which the leak occurred was in charge of the company defendant.

Argued April 14, 1911. Appeal, No. 100, April T., 1911, by plaintiff, from judgment of C. P. No. 1, Allegheny Co., March T., 1906, No. 785, on verdict for plaintiff in case of Caremeno Dialesantro v. Philadelphia Company. Before RICE, P. J., HENDERSON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before MACFARLANE, J.

At the trial the jury returned a verdict for plaintiff for $1,200.

Subsequently the court entered judgment on the verdict, MacFarlane, J., filing the following opinion:

The Philadelphia Company owns $4,000,000 of common stock of the Consolidated Company. The $2,000,000 of preferred stock are owned by other persons, i. e., the Philadelphia is the controlling stockholder. Two directors are common to both companies. The executive officers, president, vice president, secretary, treasurer and auditor are the same. The general managers are not the same. The city superintendent is the same. The Consolidated manufactures and sells artificial gas only. The Philadelphia Company does not operate the Consolidated's manufacturing plant. Its business is in natural gas. The leak was in the Consolidated Company's gas line of which the Philadelphia Company had charge along with its own and the Equitable Company's lines in the same street. Out of that situation arises the liability, if there is liability.

The statement filed is that the Philadelphia Company owned and operated. In reality it did not own the line. It owned the majority of the stock of the company which did own the line, but it did not own it any more than the preferred stockholders owned it. A stockholder is not an owner. If it "operated" the line we think the allegation of ownership is surplusage or at least not fatal variance.

The business of the two companies was so interwoven that a plaintiff might easily be misled and, while one company can not be held for another's negligence on that ground, on the other hand, if it sees fit to put itself in the position of doing work of the other company, mere bookkeeping arrangements will not relieve it.

The city superintendent of the Philadelphia Company was also superintendent of the Consolidated and had charge of both lines. He received his pay by check of the Philadelphia. The materials for manufacturing the artificial gas are purchased by the Consolidated and its work-

men do the work, but the bills to customers are sent out by the same persons, collections are made by the same, while the pipe lines are in charge of the Philadelphia; it inspects and repairs and the rest is a matter of charging to the appropriate company. The inspecting and repairs are entirely work of the Philadelphia and its man came to Fleming's cellar and inspected it for leaks and returned and inspected a few minutes before the explosion. The gas plant was managed by men paid by the Consolidated; its lines for distribution were managed by the Philadelphia. Strictly it did not own the lines but surely it operated them. The repair gang worked on three lines, its time was kept for work on each and the Philadelphia charged the other companies their proper share.

Counsel for defendant contends that the defendant is charged with a nonfeasance and not a misfeasance and that it owed no duty to the plaintiff and therefore is not negligent. The general principle is elementary. Negligence is a breach of a duty and the common expression is a breach of duty owed to the plaintiff. The brief cites Erskine v. McNichol, 16 Phila. 151; Beck v. Kittanning Co., 35 Pitts. Leg. Jr. 510; Stone v. Uniontown Co., 16 Pa. C. C. Rep. 328; Curtin v. Somerset, 140 Pa. 70; Phillips v. Craft, 139 Pa. 125; Rehder v. Miller, 35 Pa. Superior Ct. 344, and general principles may be deduced from them that a contractor with a city for cleaning the streets is not liable to one injured by his failure to do so; a guest in a hotel has no claim against a contractor who failed to properly construct the hotel so that it collapsed; a landlord who undertakes to make repairs to a floor which he was not bound to do and does the work negligently is liable, but not for failure to make repairs, etc., for the reason that there is no contract relation between the parties and no duty owed when the case is one of failure to do the act, that is a nonfeasance. A man who is hired to do certain work and fails to do it is not liable to a stranger for his failure, while he would be if he begins to do it and does it negligently. A discussion of the whole

subject is contained in Chief Justice PAXSON's opinion in Curtin v. Somerset, 140 Pa. 70.

The negligence charged here was "in allowing said gas to escape and to permit leakage at different points along its line." It let gas escape from the line, which was under its care into Fleming's cellar where it exploded. The source of the gas was a leak in the main pipe line of which the defendant was in charge and full control. Mr. Carson testified that there was no contract by which the Philadelphia Company took possession of part or all of the Consolidated property, except as to the office building. It had charge of the line and charged the Consolidated for inspection and repairs. For convenience and perhaps economy the largest stockholder took charge of a part of the "plant." It was not a mere independent contractor engaged to do a particular line of work. As was said in McNeil & Bro. Co. v. Crucible Steel Co., 207 Pa. 493 (p. 496), "It was wholly immaterial how the Crucible Steel Company got into possession of the plant of the Park Steel Company, whether by a contract, by sufferance or by a trespass; the question is, was it in the control and management of the business of that company. Was it operating its machinery and boilers at the time the plaintiff was injured?" The cases are not identical, but there, as here, there was a situation of actual control. It was held at the trial, and we think correctly, that having assumed the entire control and management of this line, inspecting, repairing and maintaining, it is liable. That it owed a duty to the plaintiff and, when it negligently allowed gas to escape into a cellar where it exploded, it must answer in damages and it is immaterial whether that negligence is misfeasance or nonfeasance.

Now, November 14, 1910, judgment is directed to be entered upon the verdict in favor of the plaintiff and against the defendant upon payment of the verdict fee.

*Errors assigned* were (1) in giving binding instructions for defendant; (2, 3) in entering judgment on the verdict;

(4) answer to defendant's second point quoted in the opinion of the Superior Court.

*David A. Reed,* of *Reed, Smith, Shaw & Beal,* for appellant, cited as to negligence: Phillips v. Craft, 139 Pa. 125; Ewing v. Ry. Co., 147 Pa. 40; Lane v. Cox, L. R. 1 Q. B. Div. (1897) 415; Erskine v. Philadelphia, 16 Phila. 151; Beck v. Water Co., 35 Pitts. Leg. Jr. 510; Rehder v. Miller, 35 Pa. Superior Ct. 344.

Cited as to the question of tuberculosis: Blasband v. Philadelphia Rapid Transit Co., 42 Pa. Superior Ct. 325; Moss v. Rapid Transit Co., 42 Pa. Superior Ct. 466.

*Thomas M. Marshall, Jr.,* with him *Charles N. Johnston* and *Thomas M. Marshall,* for appellee, cited as to liability of defendant: McNeil & Bro. Co. v. Steel Co., 207 Pa. 493; Holbrook, Cabot & Rollins Corp. v. Perkins, 147 Fed. Repr. 166; United States v. Milwaukee Refrigerator Transit Co., 142 Fed. Repr. 247; Chicago Economic Fuel Gas Co. v. Myers, 168 Ill. 139 (48 N. E. Repr. 66).

OPINION BY ORLADY, J., July 13, 1911:

The plaintiff sustained injuries, as the result of an explosion of gas which had leaked from a pipe in the street into a saloon in which he was working as a waiter. The principal element in his claim for damages was, that on account of the injuries thus received he developed tuberculosis, with which he was unquestionably suffering at the time of the trial. The accident occurred on December 16, 1905, when the plaintiff was about seventeen years of age. Some six months after the accident he returned to his home in Italy, and remained there until about a week before the trial, which began March 15, 1910. He was examined by Dr. Beatty about four months after the explosion, who testified that at that time the plaintiff complained of soreness about the chest, and some superficial wounds about the scalp were noticed; that he complained of general soreness all over; but no bones were broken and there was no

external evidence of any injuries to indicate an internal lesion.

Dr. Staub was called as a witness for the plaintiff. He had examined him a few days before the trial, and testified that the plaintiff was weak, very much debilitated; there was a loss of muscular tone; and that he had every symptom of pulmonary tuberculosis of the right lung, whether in the first or second stage, it was impossible to state; that there were external evidences of there having been a fracture of the sixth, seventh and eighth ribs on the right side; that some of the symptoms indicated degeneration of the spinal cord, and primary symptoms of locomotor ataxia, that he was suffering with night sweats; and had an increased pulse rate with a hectic flush. No evidence of the character of the sputum was given. After a protracted examination of this physician by counsel, in an effort to connect the present condition of the plaintiff with the accident which had happened more than four years before, he was finally asked: "Q. Is it possible for anybody, finding a tubercular patient in this condition, after an injury in the upper part of the right lung, where no direct violence had been applied at that place, is it possible for any doctor to say that it was or was not caused by this trauma or blow. Or, to put the question in another way, is it possible for anybody, no matter how skilled, to say that this boy would not have had the same tuberculosis if it had not been for the explosion? A. No, sir. Q. That is beyond human skill? A. Yes, sir." The witness testified generally to the fact that trauma might be a predisposing cause which might tend to develop tuberculosis in a part affected by mechanical injuries or violence, as when the ribs are broken the violence is not only applied to that part of the chest wall, but the whole side participates in it, by concussion, especially in an accident like the one described; a man falling on the floor, his whole side would be bruised when three ribs were broken, and that the part of the body most easily invaded by the tubercular bacilli is the upper right lobe of the lung. There is

not a scintilla of evidence to connect the plaintiff's condition at the time of the trial with the injuries received four years previously, as a proximate cause. The learned trial judge felt it to be his duty to submit the case, weak as it was, to the jury, and in speaking of Dr. Staub, he said, "The suggestion made here by Dr. Staub, as I understand it, is, that this man was predisposed to it. That is an opinion. It is the opinion brought here of a single physician, who does not claim to be a specialist, or a special student of tuberculosis. It is for you to consider from your observation of him, the way he gave his testimony, and what he said, as to the weight you will give it."

Under the testimony, the second point, which was refused by the court, should have been affirmed. It is as follows: "Under all the pleadings and evidence in this case the plaintiff is not entitled to recover any damages for the pulmonary tuberculosis from which he is said to be suffering, because there is no evidence that such tuberculosis is the result of the injuries alleged to have been received by him in the gas explosion."

On the other phase of the case, we feel that the court committed no error in submitting that question to the jury, the contention being that the Consolidated Gas Company should have been sued and not this defendant. The two companies were so intimately associated in their management that it is quite difficult to decide where the authority of one ends, and the other begins in relation to the control, management, use, and repair of the gas pipe lines. Under the facts of this case we are not concerned about the bookkeeping and financial complications between the different corporations. Notice of the leak in the gas main was given to an officer of the Philadelphia company, who responded to that notice by sending one of their employees to repair it, and the jury could well find that the Philadelphia company had entire physical control of these lines by maintaining, inspecting and repairing them when necessary. The district in which the leak occurred was in charge of the district foreman of the

Philadelphia company. He said he was an employee of the Philadelphia company, and his company paid for the repairs; that the employees of that company did all the work in connection with the Consolidated Gas Company, and that they were known as employees of the Philadelphia company. The argument of the learned trial judge in refusing to enter judgment in favor of the defendant non obstante veredicto, is convincing and we feel that that phase of the case was rightly decided. To the authorities cited, may be added, Holbrook, Cabot & Rollins Corporation v. Perkins, 147 Fed. Repr. 166; United States v. Milwaukee Refrigerator Transit Co., 142 Fed. Repr. 247; Chicago Economic Fuel Gas Co. v. John Myers, 168 Ill. 139; Rahenkamp v. Traction Co., 14 Pa. Superior Ct. 635; 29 Cyc. 487.

For the reasons above given the judgment is reversed and a venire facias de novo awarded.