Reitmeyer, Appellant, *v.* Sprecher.

Argued April 24, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James F. McClure, Jr.,* for appellants.

*Richard Henry Klein,* for appellee.

OPINION BY MR. JUSTICE JONES, July 1, 1968:

This appeal presents a narrow, albeit an important, issue: is a landlord subject to liability in tort for physical harm caused to his tenant by a defective condition of the leased premises which existed when the written lease was executed and which the landlord orally promised the tenant, when the lease was executed, that he would repair?

This matter comes before us on two pleadings, i.e., a complaint in trespass and preliminary objections thereto, in the nature of a demurrer, which allege that the complaint facts do not set forth a cause of action.

Meda Reitmeyer and Joe Reitmeyer [Reitmeyers] executed a printed lease for one of four row houses the owner of which was Harold Sprecher. Allegedly, the rear porch floor of the leased premises—approximately three feet above ground, access to which is by three wooden steps—was defective where the wooden porch floor overhung the top step and, allegedly, such defect was known to Sprecher. At the time of execution of the lease and, in consideration thereof, allegedly,

Sprecher orally promised to repair promptly or to provide promptly the materials to repair the leased premises including specifically repair of the rear porch floor and steps and, in reliance upon such promise, Reitmeyers executed the lease and took possession of the premises. Sprecher subsequently repeated the original oral promise to make repairs to the premises. Approximately two months after execution of the lease and the entry of Reitmeyers into possession of the premises, Mrs. Reitmeyer fell and injured herself as a result of a defect in the rear porch floor. Sprecher had not made any repairs nor had he provided materials for repairs as promised.[1]

Reitmeyers instituted an action of trespass against Sprecher in the Court of Common Pleas of Union County by the filing of a complaint to which Sprecher filed preliminary objections. The court sustained the preliminary objections and dismissed the action. From that order the instant appeal stems.

Thirty-one years ago, on *substantially* similar facts, in *Harris v. Lewistown Trust Co.,* 326 Pa. 145, 191 A. 34 (1937) we held that a promise on the part of a landlord to repair the premises, made at the time of negotiation of the lease and subsequently repeated, which was not performed did not impose upon the landlord a liability *in tort* at the suit of the tenant for injuries sustained by the tenant.

Counsel for Reitmeyers frankly concedes that, unless we now overrule *Harris, Harris* governs the instant situation and requires affirmance of the court below. What counsel for Reitmeyers urges is that *Harris* be reconsidered and overruled and that we adopt §357 of Restatement 2d, Torts, which enunciates a view contrary to that expressed by this Court in *Harris*.

---

[1] In passing upon the issue on this appeal, we must *assume* the verity of the facts well pleaded in Reitmeyers' complaint.

Section 357, supra, provides:

"Where Lessor Contracts to Repair. A lessor of land is subject to liability for physical harm caused to his lessee and others upon the land with the consent of the lessee or his sublessee by a condition of disrepair existing before or arising after the lessee has taken possession if (a) the lessor, as such, has contracted by a covenant in the lease or otherwise to keep the land in repair, and (b) the disrepair creates an unreasonable risk to persons upon the land which the performance of the lessor's agreement would have prevented, and (c) the lessor fails to exercise reasonable care to perform his contract."[2] Counsel for Reitmeyers argues that, although the majority of the jurisdictions of the American courts still adhere to the *Harris* view and reject the Restatement view, as of 1964 "An increasing minority of the courts, by now only slightly less in number, have worked out a liability in tort for such injuries to person or property, finding a duty arising out of the contract relation." (Quoting Prosser, Torts, at 422 (3d ed. 1964), and that "As of this writing, twenty jurisdictions reject the tort liability, and seventeen accept it. The latter include Illinois and Mississippi, which make qualifications." (Quoting Prosser, supra, at 422, n. 32).

In re-examining *Harris*, we initially note that the instant issue does not involve a landlord's promise to repair which is not supported by consideration wherein no duty on the part of the landlord can arise (*Singer v. Eastern Columbia, Inc.*, 72 Cal. App. 2d 402, 164 P. 2d 531 (1945)) nor a situation wherein the landlord has undertaken to make repairs and has done so neg-

---

[2] The comment to §357, supra, acknowledges that thus far the Restatement rule has "been adopted by only a minority of the American courts, and is still rejected by a majority of the courts which have considered it."

ligently in which situation a duty on the part of the landlord does arise (*Green v. Independent Oil Co.*, 414 Pa. 477, 485, 201 A. 2d 207 (1964); *Pascarella v. Kelley*, 378 Pa. 18, 23, 105 A. 2d 70 (1954); *Fleming v. Philadelphia Co.*, 234 Pa. 74, 82 A. 1095 (1912)). Moreover, we are mindful that this Court, in *Hayden v. Second National Bank of Allentown*, 331 Pa. 29, 31, 199 A. 218 (1938), speaking of the principles enunciated in *Harris*, stated: ". . . from them we have no intention to depart".

The framers of §357, supra, have clearly set forth their reasons for rejection, by implication, of the *Harris* rule and the adoption of a rule imposing liability. Such reasons may be summarized: (a) an "increasing recognition of the fact that tenants who lease defective premises are likely to be impecunious and unable to make the necessary repairs which their own safety and that of others may demand; that one who is in possession of the premises only for a limited term does not have the same incentive to maintain them in good condition as the lessor to whom they will revert at the end of the lease; and that the landlord who receives benefit from the transaction in the form of rent may properly be required to assume in return at least certain limited obligations with respect to the safety of others"; [3] (b) by reason of the special relation between a landlord and a tenant, there is a likelihood that the latter will rely upon the former to make repairs and be induced to forego efforts which he would otherwise make to remedy dangerous conditions on the premises; (c) while the landlord retains no right to exclude anyone from the land or control its use and his right to enter arises only from an agreement to repair the land, at least to the extent of his undertaking, the landlord retains a form of "control" over the premises; (d)

---

[3] Restatement 2d, Torts, §§356, comment a.

while the landlord does not insure the safety of the premises, he does have a duty which, although founded on a contract, is a duty cognizable in tort and the landlord should be liable if his failure to make repairs in accordance with his undertaking is due to his failure to exercise reasonable care to that end; (c) by analogy to a situation where an apartment or office can be used with safety only if light and heat is provided and in the lease the landlord agrees to provide such service, the landlord should be subject to liability for bodily harm caused by a failure to exercise reasonable care to make the premises safe.[4] With the possible exception of the fictitious "control" theory under (c) supra, the reasons advanced are sound.

Negligence, not simply the breach of the agreement to repair, is the gist of the action in tort and the agreement to repair does not render the landlord liable unless he has knowledge of the defect when the lease is executed and the agreement to repair made and then only when consideration can be found to support the agreement to repair.[5]

We must recognize the fact that, since the time when *Harris* was decided, critical changes have taken place economically and socially. Aware of such changes, we must realize further that most frequently today the average prospective tenant vis-a-vis the prospective landlord occupies a disadvantageous position. Stark neces-

---

[4] Comment, Restatement 2d, Torts, §357, comments b, c, d, e.

[5] Prior to the promulgation of the *Harris* rule, this Court, on at least two occasions, in considering the liability of a landlord to a third person for bodily harm caused by lack of repairs of the leased premises and enunciating a general rule exempting from liability the landlord, noted certain exceptions to this general rule one of which exceptions was where the landlord had contracted and agreed with the tenant to make repairs. See: *Cunningham v. Rogers*, 225 Pa. 132, 136, 73 A. 1094 (1909); *Harte v. Jones*, 287 Pa. 37, 39, 134 A. 467 (1926).

sity very often forces a tenant into occupancy of premises far from desirable and in a defective state of repair. The acute housing shortage mandates that the average prospective tenant accede to the demands of the prospective landlord as to conditions of rental, which, under ordinary conditions with housing available, the average tenant would not and should not accept.

No longer does the average prospective tenant occupy a free bargaining status and no longer do the average landlord-to-be and tenant-to-be negotiate a lease on an "arm's length" basis. Premises which, under normal circumstances, would be completely unattractive for rental are now, by necessity, at a premium. If our law is to keep in tune with our times we must recognize the present day inferior position of the average tenant vis-a-vis the landlord when it comes to negotiating a lease.

In the case at bar, it is *alleged* that, as an inducement to the execution of the instant lease for premises which were obviously in a defective condition, the landlord promised the tenant to remedy this defective condition and, in reliance upon that promise a lease was negotiated.[6]

Under the instant circumstances, a duty on the part of the landlord arose to repair and render safe the defective condition of the premises and if, as alleged, physical harm was caused to the tenant, by a breach of the landlord's promise to repair, liability in tort on the part of the landlord should arise. As we said in *Evans v. Otis Elevator Co.,* 403 Pa. 13, 18, 168 A. 2d 573 (1961): "It is not the contract per se which creates the duty; it is the law which imposes the

---

[6] In passing upon the issue, we do not pass upon the manner in which, under the parol evidence rule, such oral promise is to be proven or the admissibility into evidence of proof of such oral promise.

duty because of the nature of the undertaking in the contract." Such holding is based upon the common sense of the situation and in line with the most rudimentary principles of justice.

To the extent that *Harris v. Lewistown Trust Co.* and *Hayden v. Second Nat. Bank of Allentown* are in conflict with the Restatement 2d, Torts, §357, they are hereby expressly overruled.[7] We adopt Section 357 of Restatement 2d, Torts, as the sound and sensible approach to the instant problem.[8]

Order reversed.[9]

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

The majority Opinion overrules three decisions of this Court which are right smack in point. The majority do this because all of a sudden the landlord-to-be and the tenant-to-be do not negotiate a lease on an "arm's length" basis, and the position of the average tenant vis-a-vis the landlord is today inferior—as if this situation were different than ever before. If premises are in bad condition, it not only affects and lowers their sale value but likewise their rental value. There is no acute housing shortage (as the majority assert), and, if there were, it would not have arisen suddenly in the last three months after this Court decided *Kolojeski v. John Deisher, Inc.*, 429 Pa. 191, 194, 195, 239 A. 2d 329 (1968). In *Kolojeski* this Court decided for

---

[7] Unfortunately, *in dicta*, this Court very recently in *Kolojeski v. Deisher, Inc.*, 429 Pa. 191, 194, 195, 239 A. 2d 329 (1968), quoted with approval *Keiper v. Marquart*, 192 Pa. Superior Ct. 88, 91, 159 A. 2d 33 (1960), which reaffirmed the *Harris* rule. Such dicta should not be considered as authoritative.

[8] See: 163 A.L.R. 300, supplemented 78 A.L.R. 2d 1238. Cf. Eldredge, Modern Tort Problems, pp. 150-156 inc. (1941).

[9] Of course, the question of whether the injured tenant might have been guilty of contributory negligence is not before us on this appeal.

292

the third time that a tenant could not recover in tort for injuries suffered by him due to a defective condition of the leased premises, which was known to the tenant and which the landlord had orally promised the tenant to repair. *Kolojeski;* and *Harris v. Lewistown Trust Co.,* 326 Pa. 145, 191 A. 34 (1937); and *Hayden et ux. v. National Bank of Allentown,* 331 Pa. 29, 31, 199 A. 218 (1938); squarely govern the instant case, and to justify its present decision, they must, as the majority admit, be overruled.

In a Constitutional Republican form of Government such as ours, which is based upon law and order, *Certainty and Stability* are *essential.* Unless the Courts establish and maintain certainty and stability in the law, businessmen cannot safely and wisely make contracts with their employees or with each other; the meaning of wills, bonds, contracts, deeds and leases will fluctuate and change with each change in the personnel or in the changing views of a Court; property interests will be jeopardized and frequently lost or changed; Government cannot adequately protect law-abiding persons or communities against criminals; private citizens will not know their rights and obligations; and public officials will not know from week to week or month to month the powers and limitations of Government. This has been recognized for centuries by English-speaking peoples. Lord COKE, Chief Justice of England, thus wisely expressed (circa 1600) these truths: "The knowne certaintie of the law is the safetie of all." This has been a beacon light for Anglo-American Courts, for text authorities, and for law-abiding Americans ever since the foundation of our Country. In the realm of the law it is usually expressed in the principle known as Stare Decisis. Stare Decisis is one of the bed-rocks upon which the House of Law has been erected and maintained.

It is obvious, if we are to progress, that there always will be exceptions to every general rule or principle, and that neither the law nor the principle of Stare Decisis can or should be as immutable as the laws of the Medes and the Persians. However, the instant case does not fall within any of the exceptions to the principle of Stare Decisis.*

What is the use of talking about Stare Decisis, or increased litigation, or the terrible backlog of cases, if a majority of this Court bury Stare Decisis at their daily or weekly or monthly *wish or whim?* And what, may I ask, happens to the parol evidence rule and the doctrine of assumption of risk, or of contributory negligence?

For these reasons, I vigorously dissent.

---

\* *Restifo v. McDonald*, 426 Pa. 5, 13-18, 230 A. 2d 199; and *Michael v. Hahnemann Medical College and Hospital*, 404 Pa. 424, 437-442, 172 A. 2d 769.