J-S11001-18

2018 PA Super 216

| | | |
|---|---|---|
| DAWN CHOLEWKA AND RONALD H. CHOLEWKA, HUSBAND AND WIFE | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | : : : : : | |
| v. | : : : | |
| | : | No. 2846 EDA 2017 |
| ALDO GELSO AND INGEBORG GELSO, HUSBAND AND WIFE v. | : : : : : | |
| RICHARD NEIDKOWSKI AND LITTLE RICHIE'S LANDSCAPING, LLC | : : | |

Appeal from the Order Entered August 2, 2017
In the Court of Common Pleas of Pike County
Civil Division at No(s):  2013- CIV-1292

BEFORE:  OTT, J., STABILE, J., and MUSMANNO, J.

OPINION BY OTT, J.:                                    **FILED JULY 27, 2018**

Ronald H. and Dawn Cholewka (collectively "the Cholewkas"), husband and wife, appeal from the order entered August 2, 2017, in the Pike County Court of Common Pleas, granting summary judgment in favor of additional defendants Richard Neidkowski and Richie's Landscaping, LLC (collectively "Neidkowski").  The order also made final a prior order, entered September 23, 2016, granting summary judgment in favor of the original defendants Aldo Gelso and Ingeborg Gelso (collectively "the Gelsos").  The Cholewkas raise three issues on appeal challenging the trial court's grant of summary judgment

in favor of Neidkowski and the Gelsos. For the reasons below, we affirm in part, vacate in part, and remand.

The facts underlying this appeal are as follows. At all relevant times, the Gelsos owned a property located at 149 Hatton Road, Hawley, Pennsylvania. On March 12, 2012, they leased the property to the Cholewkas, as well as their daughter, Heather Cholewka, and her boyfriend, Richard Neidkowski. All four tenants signed the lease, agreed to accept the property "as is," and agreed to make all repairs during their tenancy. Motion for Summary Judgment of Gelso, 6/3/2016, Exhibit A, Lease Agreement (hereinafter "Lease Agreement"), at ¶¶ 8-9. The Cholewkas moved into the upstairs portion of the property, while Heather, Neidkowski and their child moved into the downstairs portion of the property. Sometime thereafter, Neidkowski installed a gravel parking pad next to the asphalt driveway so that he would have a space to park his work truck. The parking pad was situated two to three inches below the surface level of the driveway. *See* Deposition of Richard Neidkowski, 12/15/2014, at 22-23.

On October 4, 2012, at approximately 9:15 p.m., Dawn intended to take her dog for a walk. However, the dog immediately slipped off the leash and ran towards the back of the house, which was a wooded area. Although there was a light illuminating the front door and the back porch, the sides of the house, including the gravel parking pad, had no lighting. Both Dawn and Ronald walked to the back of the house to look for the dog. Ronald then went back into the house to retrieve a flashlight. In the meantime, Dawn walked

around the side of the house where the parking pad was located. However, as she stepped up on the asphalt driveway from the parking pad, she tripped and fell, resulting in a fractured tibia.

On August 12, 2013, the Cholewkas filed a negligence action against the landlords, the Gelsos, followed by an amended complaint on September 26, 2013. They alleged the Gelsos were negligent for failing to warn them of the dangerous condition caused by the uneven driveway and lack of lighting in the area. On January 16, 2014, counsel for the Gelsos filed a notice of Aldo Gelso's death. No personal representative was substituted in his place. After submitting an answer and new matter on April 1, 2014, the Gelsos filed a motion for leave to join Neidkowski and the company he owns, Little Richard's Landscaping, as additional defendants.[1]

On June 3, 2016, the Gelsos filed a motion for summary judgment, asserting the Cholewkas failed to establish the necessary elements of a negligence action. By order dated September 23, 2016, the court granted summary judgment in favor of the Gelsos. This Court subsequently denied the Cholewkas' request for permission to appeal. *See* Order, January 10,

---

[1] The trial court issued a rule to show cause why Neidkowski should not be joined. The Cholewkas did not respond to the rule to show cause, and, on April 29, 2014, the Gelsos filed a motion to make the rule absolute, attaching a letter from the Cholewkas' attorney which informed them the Cholwekas did not oppose the joinder. *See* Motion of Defendants of Make Rule Absolute, 4/29/2014, at Exhibit B. The court granted the Cholewkas' motion the next day. Thereafter, on May 5, 2014, the Gelsos filed a joinder complaint against Neidkowski.

2017. On May 5, 2017, Neidkowski also filed a motion for summary judgment asserting, *inter alia*, he owed no duty to the Cholewkas. By order dated August 2, 2017, the trial court granted Neidkowski's motion. This timely appeal followed.[2, 3]

All of the Cholewkas' issues on appeal challenge the trial court's award of summary judgment to the defendants and the additional defendants. When reviewing an order of the trial court granting summary judgment, we are guided by the following:

> Summary judgment is appropriate where the record clearly demonstrates there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. ***Atcovitz v. Gulph Mills Tennis Club, Inc.***, 571 Pa. 580, 812 A.2d 1218, 1221 (2002); Pa. R.C.P. No. 1035.2(1). When considering a motion for summary judgment, the trial court must take all facts of record and reasonable inferences therefrom in a light most favorable to the non-moving party. ***Toy***[ ***v. Metropolitan Life Ins. Co.***], 928 A.2d [186,] 195 [(Pa. 2007)]. Whether there are no genuine issues as to any material fact presents a question of law, and therefore, our standard of review is *de novo* and our

---

[2] We note the September 23, 2016, order that granted summary judgment in favor of the Gelsos was interlocutory and not appealable, since it did not dispose of all claims and all parties. ***See*** Pa.R.A.P. 341(a). However, once the trial court granted summary judgment in favor of Neidkowski on August 2, 2017, the September 2016 order ripened into a final order for appeal purposes. ***See McNeal v. Eaton Corp.***, 806 A.2d 899, 901 n.2 (Pa. Super. 2002) ("We note that a trial court order declaring a case settled as to all remaining parties renders prior grants of summary judgment final for purposes of Pa.R.A.P. 341, even if the prior orders entered disposed of fewer than all claims against all parties.").

[3] On September 1, 2017, the trial court ordered the Cholewkas to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The Cholewkas complied with the court's directive and filed a concise statement on September 21, 2017.

scope of review plenary. ***Weaver v. Lancaster Newspapers, Inc.***, 592 Pa. 458, 926 A.2d 899, 902–03 (2007).

***Estate of Agnew v. Ross***, 152 A.3d 247, 259 (Pa. 2017). "In sum, only when the facts are so clear that reasonable minds cannot differ, may a trial court properly enter summary judgment." ***Roche v. Ugly Duckling Car Sales, Inc.***, 879 A.2d 785, 789 (Pa. Super. 2005) (quotation omitted), *appeal denied*, 901 A.2d 499 (Pa. 2006).

The Cholewkas' first two issues challenge the court's award of summary judgment to additional defendant, Neidkowski. In their opening argument, the Cholewkas contend the trial court erred or abused its discretion in concluding Neidkowski owed no duty of care to them because they were all co-possessors of the same land. ***See*** Cholewkas' Brief at 19.

The Restatement (Second) of Torts defines a possessor of land as, *inter alia*, "a person who is in occupation of the land with intent to control it[.]" Restatement (Second) of Torts § 328E (1965).[4] It is well-established that "[t]he standard of care a possessor of land owes to one who enters upon the land depends upon whether the person entering is a trespasser, licensee, or invitee." ***Carrender v. Fitterer***, 469 A.2d 120, 123 (Pa. 1983). In the

---

[4] The other definitions for a possessor of land in Section 328E are not relevant to the facts herein. ***See*** Restatement (Second) of Torts § 328E (1965) (defining a possessor of land as "a person who has been in occupation of land with intent to control it, if no other person has subsequently occupied it with intent to control it," and "a person who is entitled to immediate occupation of the land, if no other person is in possession under" the prior definitions).

present case, it is clear Dawn was not a trespasser at the time of the accident.[5]

However, the Cholewkas maintain she was either a gratuitous licensee or an

invitee. **See** Cholewkas' Brief at 21.

Pursuant to the Restatement, a licensee is "a person who is privileged

to enter or remain on land only by virtue of the possessor's consent."

Restatement (Second) of Torts § 330 (1965). An invitee is categorized as

either a public invitee or a business visitor. **See id.** at § 332.

> []A public invitee is a person who is invited to enter or remain on
> land as a member of the public for a purpose for which the land is
> held open to the public.
>
> []A business visitor is a person who is invited to enter or remain
> on land for a purpose directly or indirectly connected with business
> dealings with the possessor of the land.

***Id.***

As noted above, the trial court concluded Neidkowski owed no duty to

Dawn because she was a co-possessor of the property in question. In the

order granting Neidkowski summary judgment, the court opined:

> In this case, [the Cholewkas] do not qualify as trespassers,
> [licensees], or invitees. [The Cholewkas] were privileged to enter
> and remain on the property, and so cannot be considered
> trespassers. [The Cholewkas] were not privileged to enter or
> remain on the property only by virtue of the possessor's consent,
> and so cannot be considered licensees. [The Cholewkas] were
> neither invited to enter or remain on land as members of the
> public, nor invited to enter or remain on land for a purpose directly
> or indirectly connected with business dealings with the possessor
> of land, and so cannot be considered invitees. Rather, the facts

---

[5] **See** Restatement (Second) of Torts § 329 (1965) (defining trespasser as "a person who enters or remains upon land in the possession of another without a privilege to do so created by the possessor's consent or otherwise").

of this case indicate that [the Cholewkas], along with Heather [] and [] Neidkowski, all qualify as possessors of land in accord with the Restatement (Second) of Torts.

The record indicates that a single agreement between [the Cholewkas], [] Neidkowski, and Heather [] and [the Gelsos] governed the lease of the property; a single document signed by [the Cholewkas], [] Neidkowski, and Heather []. Also, rent for the property was the responsibility of all signatories to the Lease Agreement despite any private understanding regarding appropriate apportionment that the signatories may have reached between themselves. Finally, the home on the property is a single-family dwelling, not a multi-family dwelling or townhome-style development. The record indicates [the Cholewkas] occupied the upper level while [] Neidkowski and Heather [] occupied the lower level, as agreed between those lessees. However, the Lease Agreement failed to indicate that the upper and lower levels of the dwelling were separate, or considered separate, for the purpose of leasing the property.

In light of these facts, this Court finds that all signatories to the Lease Agreement were possessors of the property at the time of [Dawn's] injuries. Logic dictates that [the Cholewkas] cannot be both possessors of land and trespassers, licensees, or invitees simultaneously.

Trial Court Order, 8/2/2017, at 5-6. **See also** Trial Court Opinion, 10/31/2017, at 5-6.

In asserting Neidkowski owed a duty to Dawn, the Cholewkas first cite **Bouy v. Fidelity-Philadelphia Trust Co.**, 12 A.2d 7 (Pa. 1940), in which the Supreme Court determined that a subtenant and his invitee, who was injured on the premises, were required to "look to the tenant and not the landlord out of possession for recovery." Cholewkas' Brief at 22. In that case, an invitee of a subtenant was killed after a building collapsed. The invitee's husband sued the owner of the building, claiming it had rented the building in a "ruinous condition." **Bouy**, **supra**, 12 A.2d at 8. On appeal, the Supreme Court

concluded the landowner, out of possession, owed no duty to the subtenant's invitee because the tenant "expressly agreed to take the premises 'as is, make improvements to the interior and keep them in good order and repair" in the lease agreement. *Id.* It is important to note that the only issue presented was whether the subtenant's invitee could recover from the landowner. Therefore, the court's statement that the invitee was required to "look to" the tenant for recovery was *dicta*. Further, unlike the facts presented here, the injured party was not a co-possessor of the land.

Nevertheless, the Cholewkas also rely upon the Supreme Court's decisions in *Matthews v. Spiegel*, 122 A.2d 696 (Pa. 1956), and *Stabelli v. Somerton Bldg. & Loan Ass'n*, 23 A.2d 477 (Pa. 1942), to support their claim that Dawn stood in the position of a gratuitous licensee or invitee as to Neidkowski. In *Matthews*, a guest of a tenant was injured as a result of a defective condition in a stairway in an apartment building. *See Matthews*, *supra*, 122 A.2d at 697. Although the tenant's lease did not expressly provide her with use of the basement where the stairway led, she was permitted, by the landowners, to store some of her belongings there. Further, the janitor of the building, who was employed by the landowners, testified he reported the defective condition to one of the landowners about a month prior to the accident, but it was not repaired. *See id.*

The Supreme Court found the duty of the landowners to the tenant's guest was the same as their duty to the tenant. *See id.* at 698. Because the tenant was permitted to use the basement solely for her own convenience,

- 8 -

the Court concluded she was a gratuitous licensee, and the general duty landowners owe to a licensee is to "refrain from willfully or wantonly injuring" her. *Id.* However, the Court also recognized an exception to the general rule: a landowner "is likewise liable for injury arising from a latent defect in the premises of which he has knowledge and of which he fails to inform the licensee." *Id.* (emphasis omitted). Because one of the landowners knew of the dangerous condition for a month, and "neither repaired it nor warned the lessee of the danger," the *Matthews* Court affirmed the verdict in favor of the plaintiff. *Id.*

In *Stabelli*, a business tenant was also injured on a stairwell leading to the basement of the building. The Court found that while the tenant did not lease the basement, her use thereof "formed part of the consideration" of her lease, and the landowner maintained control over that part of the premises. *Stabelli*, *supra*, 23 A.2d at 479. Therefore, the Court determined the tenant had the status of an invitee toward the landowner. *See id.*

Based on the holdings in *Matthews* and *Stabelli*, the Cholewkas insist Dawn was a "gratuitous licensee or invitee" to whom Neidkowski owed a duty of care. Cholewkas' Brief at 22. We disagree. Unlike in the cases above, Neidkowski was not a landowner out of possession. Rather, he was a co-possessor of the property, along with the Cholewkas. Our research has uncovered no decisions in which one possessor of land owed a duty of care to another possessor of land under premises liability principles. Accordingly, we

find no error on the part of the trial court in granting summary judgment to Neidkowski on this basis.

Next, the Cholewkas contend the trial court erred or abused its discretion in granting summary judgment to Neidkowski under ordinary negligence principles. *See* Cholewkas' Brief at 23. Specifically, they insist a genuine issue of material fact existed as to whether Neidkowski foreseeably created an unreasonable risk of harm in constructing a gravel parking pad for his work vehicles. *See id.* at 23-24. They reiterate their initial claim that Dawn "was owed a duty as a gratuitous invitee or licensee," as well as assert Neidkowski "altered the common area of the property" for his own benefit, and in doing so, created a "dangerous 'lip.'" *Id.* at 25.

Preliminarily, we note that as discussed above, Neidkowski did not owe a duty to Dawn as a licensee or invitee. Nevertheless, when no special relationship exists between parties, a defendant still owes a general duty "not to expose others to risks of injury which are reasonably foreseeable." ***Schmoyer by Schmoyer v. Mexico Forge, Inc.***, 649 A.2d 705, 708 (Pa. Super. 1994). ***See also Roche***, ***supra***, 879 A.2d at 790 ("[A] duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others.") (citation omitted).

The trial court explained its ruling on this issue as follows:

> First, the parties have not asserted, and no evidence has been presented to show, that either the parking pad or the paved driveway was in any way defective in construction or condition at the time of the injury. As such, a change in elevation where the pad and the driveway meet is both expected and reasonable.

Second, the evidence in this matter indicates that [the Cholewkas] were fully aware of the construction of the parking pad and any risks which may have been associated with it. The parties leased the property in February, 2012. The parking pad was installed in April or May of 2012. [] Dawn [] fell on October 4, 2012. [The Cholewkas], therefore, were fully aware of the construction of the parking pad, lived with it, and walked on it for approximately five (5) months prior to [] Dawn['s] injury. Additionally, [] Dawn [] indicated at deposition that she was aware of the lip between the driveway and the parking pad.

Third, [] Dawn [] indicated her fall took place at night, she failed to retrieve an additional light source before attempting to walk in the area in which the lip was located, and she was aware of poor lighting conditions in the area of her fall.

We find[] that the risk created by the lip was not unreasonable in light of the properly-constructed parking pad and [the Cholewkas'] knowledge of the conditions at the time. Additionally, we find [Neidkowski] could not have foreseen [Dawn's] ill-advised nighttime search for her dog in the poorly-lit area of the lip without the aid of a flashlight.

We hold that [Neidkowski] did not owe a duty of care to [the Cholewkas] because [Neidkowski] did not engage in conduct which foreseeably created an unreasonable risk of harm.

Trial Court Opinion, 10/31/2017, at 7-8.

Again, we find no basis to disagree. The Cholewkas' argument focuses on the fact that (1) Neidkowski constructed the parking pad solely for his own benefit, and (2) additional discovery could "potentially" show the construction was defective. Cholewkas' Brief at 26. However, the record indicates the Cholewkas were aware of the construction of the parking pad, which was installed several months before Dawn's accident. Moreover, they do not dispute Neidkowski's account that his construction of the parking pad actually reduced the depth of the "lip" that existed between the driveway and the ground before he installed the parking pad. **See** Deposition of Richard

Neidkowski, 12/15/2014, at 58. Furthermore, Dawn knew there was no lighting on the side of the house, but proceeded to walk there without a flashlight. ***See*** Deposition of Dawn Cholewka, 3/19/2014, at 81 (Dawn admitted she was aware that "it was dark on the side of the house"). When asked if she recognized that she needed to step up to get onto the driveway, the following exchange took place:

> [Dawn:] Did I recognize it? I would think naturally I would see that and would just step up onto it.
>
> When you say, do – did I recognize it? Do I consciously – did I consciously look at that and say, oh, there's a big lip here. I need to step up higher? I don't understand what you want me to say to that?
>
> * * * *
>
> Q Would you agree with me that you must have had some awareness of something there to cause you to want to step up, correct?
>
> [Dawn:] Yeah, I'm – I guess yeah. I – it's – let me just clarify. Normally there would be a vehicle parked right at that spot. I would not on – any other time that I may have been around the house, I wouldn't have even walked in that particular spot because there would be a vehicle there. My husband's vehicle was always parked there.
>
> If I was to be of coming around the house, I probably would have walked behind his car and gone on into the house that way because it was very close to the edge where the – where the garage starts.

***Id.*** at 64-65. Therefore, although she later tried to qualify her concession, Dawn admitted she was aware of the "lip" between the driveway and the gravel parking pad before the day she fell.

- 12 -

Accordingly, under the facts of this case, "reasonable minds cannot differ" as to the fact that Neidkowski's construction of a parking pad did not create a foreseeable, unreasonable risk of harm to others. *See Roche*, *supra*, 879 A.2d at 789. Accordingly, we affirm the August 2, 2017, order granting summary judgment to Neidkowski.

In their third issue, the Cholewkas contend the court erred or abused its discretion in granting summary judgment in favor of the original defendants, the Gelsos, when it determined the Gelsos owed no duty to the Cholewkas to warn them of the unreasonable risk of harm caused by Neidkowski's construction of the parking pad, which Aldo Gelso had supervised. *See* Cholewkas' Brief at 27.

The liability of a landlord to his tenant for injuries the tenant sustains on the premises is based upon the following principles:

> (1) in the absence of any provision in the lease, a landlord is under no obligation to repair the leased premises, to see to it that they are fit for rental or to keep the premises in repair; (2) a tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenant knows or can ascertain by a reasonable inspection; (3) a landlord out of possession, however, may be liable (a) where he conceals a dangerous condition of which he has knowledge and of which the tenant has no knowledge or cannot be expected to discover and (b) where he knows or should know of a dangerous condition and leases the premises for a purpose involving a 'public use' and has reason to believe the tenant will not first correct the condition; (4) a landlord of a multiple-tenanted building, reserving control of the common approaches, such as sidewalks, passageways, etc., or parts of the building common to all tenants, such as the roof and walls, is bound to keep such approaches and parts reasonably safe for the use of tenants and their invitees and a landlord becomes liable where he either had actual notice of a defective condition therein

or was chargeable with constructive notice, because had he exercised reasonable inspection he would have become aware of it.

*Lopez v. Gukenback*, 137 A.2d 771, 774–775 (Pa. 1958). Furthermore, a landlord may also be found liable if "as an inducement to the execution of [a] lease for premises which were obviously in a defective condition, the landlord promised the tenant to remedy this defective condition and, in reliance upon that promise, a lease was negotiated." *Reitmeyer v. Sprecher*, 243 A.2d 395, 398 (Pa. 1968) (footnote omitted). Under this theory of recovery,

> [n]egligence, not simply the breach of the agreement to repair, is the gist of the action in tort and the agreement to repair does not render the landlord liable unless he has knowledge of the defect when the lease is executed and the agreement to repair made and then only when consideration can be found to support the agreement to repair.

*Id.* at 397 (footnote omitted).

Consistent with the above precepts, in the present case, the lease agreement signed, by the Cholewkas, specifically provided (a) the tenants were "responsible for all repair and maintenance," and (b) they had inspected the premises and were taking the property "as is." Lease Agreement, 2/12/2012, at ¶¶ 9, 36. Nevertheless, the Cholewkas claim the Gelsos are liable for Dawn's injury under one of two theories. First, they maintain the property had two separate apartments, and Aldo Gelso supervised the construction of the parking pad, which was in a common area used by both sets of tenants. *See* Cholewkas' Brief at 30. Second, the Cholewkas insist the Gelsos "clearly knew of the defect, knew it was in a remote area of the property and poorly illuminated at night." *Id.* They assert: "The risk to

- 14 -

someone walking in that area is clear and [the Gelsos] failed to inform [the Cholewkas]." *Id.*

Here, in granting the Gelsos' motion for summary judgment, the trial court found that "nothing in the evidentiary record shows or indicates that the house is a multi-tenanted unit."[6]    Order, 9/23/2016, at 7.    The court explained:

> Rather, the lease shows that all four residents signed one lease for the entire property as a whole.  Moreover, [Dawn's] testimony shows that [the Gelsos] retained no control over the driveway.

*Id.* at 7-8.  Accordingly, the court determined the Gelsos owed no duty to the Cholewkas pursuant to the multi-tenant theory.  We agree.

Although the Cholewkas lived in the top portion of the residence, and Neidkowski and Heather occupied the bottom portion of the residence, the lease agreement listed all four tenants as occupying one residence.  Moreover, Ronald Cholewka admitted in his deposition testimony that the Gelsos rented the property as one residence.  He testified that Aldo Gelso told him the home was "not complied to rent as a two-family house" and Gelso did not care how the four tenants split the rent, but that "$1600 is what [he gets] for the house."  Deposition of Ronald H. Cholewka, 4/16/2014, at 22-23.  The Cholewkas provide no support for their claim that the property was a multi-

---

[6] We note that in its Pa.R.A.P. 1925(a) opinion, the trial court declined to address this issue because the notice of appeal was filed more than 30 days after it entered the order granting the Gelsos' motion for summary judgment. *See* Trial Court Opinion, 10/31/2017, at 4.  However, as noted *supra*, that order was unappealable at the time it was entered because it did not resolve all claims against all parties. *See supra*, at n.1.

tenant residence save for the fact that they treated it as such. Furthermore, we agree with the determination of the trial court that there is no support in the record for the Cholewkas' claim that the Gelsos retained control of the driveway. *See Lopez*, *supra*. Accordingly, the Cholewkas' assertion that the Gelsos owed a duty to them under the multi-tenant building exception, fails.

Nonetheless, relying again on **Matthews**, **supra**, the Cholewkas claim the Gelsos owed them a duty because the Gelsos knew of the defect in construction, which was located in a poorly lit area of the property, but failed to warn them of the potential hazard. Again, we find their reliance on **Matthews** misplaced. Liability in **Matthews** was premised upon the fact the owner of the building "knew of the dangerous condition [] a month before the accident and neither repaired it nor warned the lessee of the danger." **Matthews**, **supra**, 122 A.2d at 698. However, in **Matthews**, there was no indication the lessee, or her injured guest, knew of the dangerous condition of the step. Conversely, here, the Cholewkas rented the entire property "as is" from the Gelsos, which necessarily included the asphalt driveway. Further, the Gelsos did not undertake to install the parking pad as consideration for the lease, nor were they specifically informed that the parking pad created a dangerous condition after it was installed. While Aldo Gelso may have "supervised" the installation, there is no evidence he was aware of a dangerous condition that was **not** already readily apparent to the Cholewkas. **See Lopez**, **supra**, 137 A.2d at 775 (holding a landlord out of possession may be liable "where he conceals a dangerous condition of which he has knowledge

- 16 -

and of which the tenant has no knowledge **or cannot be expected to discover**") (emphasis supplied). Furthermore, as expressly provided in the lease, the tenants were "responsible for all repair and maintenance." Lease Agreement, 2/12/2012, at ¶ 36. Accordingly, no relief is warranted.

While we conclude the judgments entered in this case should be affirmed, we agree with the Gelsos' contention that Aldo Gelso should have been dismissed from the case for lack of jurisdiction after a notice of his death was filed, and no personal representative was substituted in his place. This Court's recent decision in ***Grimm v. Grimm***, 149 A.3d 77 (Pa. Super. 2016), *appeal denied*, 169 A.3d 25 (Pa. 2017), is controlling.

In ***Grimm***, ***supra***, after one of the defendants died during the litigation, no notice of death was filed and no personal representative was substituted in his place. ***See id.*** at 81. However, the trial court later granted a judgment of *non pros* filed by the deceased party's attorney. On appeal, a panel of this Court held:

> [T]he death of a party deprives the trial court of subject matter jurisdiction over litigation by or against the deceased until such time as the deceased's personal representative is substituted in his or her place. We make this determination primarily based upon the language of the applicable rules of civil procedure and the case law in this Commonwealth addressing the effect of a lawsuit filed by or against a party who dies during the pendency of litigation.

***Id.*** at 84. Concluding the lack of subject matter jurisdiction is an issue which may be raised *sua sponte*, the panel vacated the judgment against the deceased party and remanded the matter to the trial court "to either dismiss

- 17 -

the cause of action for want of jurisdiction or to permit the substitution of a personal representative in accordance with the Pennsylvania Rules of Civil Procedure." *Id.* (footnote omitted). Nevertheless, the panel affirmed the orders sustaining the preliminary objections filed by the other parties. *See id.* at 90.

Pursuant to the dictates of *Grimm*, we conclude the trial court herein had no subject matter jurisdiction to enter summary judgment in favor of Aldo Gelso after a notice of his death was filed, and no personal representative was substituted in his place. Accordingly, we vacate the judgment entered in favor of Aldo Gelso and remand for proceedings consistent with *Grimm*. In all other respects, we affirm.

Judgment affirmed in part, and vacated in part. Case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/18